*In re* MARRIAGE OF JULIANNE N. WIEDNER, Petitioner-Appellant, and JOSEPH R. WIEDNER, Respondent-Appellee.

Second District    No. 78-368

Opinion filed August 23, 1979.—Rehearing denied September 26, 1979.

John R. Mackay and Joel R. Nathan, both of Wheaton, for appellant.

Charley Popejoy, of Popejoy, Speer, Cuchna & Popejoy, of Wheaton, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Julianne N. Wiedner appeals from the portion of a judgment for dissolution of marriage which adjudicated matters of support, maintenance and property rights. She contends that a bifurcated trial with a 48-hour interval was mandatory under section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)), and that her waiver of the waiting period after the proof of grounds was ineffectual. She also contends that the judgment is against the manifest weight of the evidence.

■■ Petitioner argues that the meaning of the term "contested trials" in the Act includes a contest as to any issue and that this provision cannot be waived. The Illinois Supreme Court has recently determined that, as to contested trials, the trial must be bifurcated and the 48-hour interval respected even if the parties and the trial court agree to proceed immediately with the remaining issues after grounds are found. (*Strukoff v. Strukoff*, 76 Ill. 2d 53, 61-62 (1979).) Therefore, the essential question before us is whether the proceedings amounted to a contested trial as described in section 403(e) of the Act which provides:

"(e) Contested trials shall be on a bifurcated basis with the grounds being tried first. Upon the court determining that the grounds exist, the court shall allow not less than 48 hours for the parties to settle amicably the remaining issues before resuming the trial." Ill. Rev. Stat. 1977, ch. 40, par. 403(e).

The petitioner filed her complaint for divorce on November 15, 1976. There followed interrogatories, discovery, depositions, conferences between counsel and with the parties and a pretrial. The parties appeared in court thereafter on December 16, 1977. The parties agreed that "the petitioner, wife, shall get a divorce by stipulation as if in default." Before the terms of the stipulation were recited to the court, counsel for Mrs. Wiedner stated that 13 conferences had taken place with the six children of the parties and that the parties had agreed that the petitioner would have custody of the four minor children; and the additional stipulation

was stated that the petitioner would proceed, as the court noted, "with respect to the grounds, and then go ahead with the property."

The petitioner then testified as to the grounds, and there was no cross-examination by respondent's attorney. At the close of this testimony the court stated that a judgment of dissolution of the marriage was awarded to the petitioner and that, except for custody, the remaining issues were contested, but that the parties had stipulated to waive "bifurcation." The court then proceeded directly to a hearing on the remaining issues. The final judgment was filed on April 25, 1978. Petitioner filed her notice of appeal on May 24, 1978.

In *Strukoff v. Strukoff*, the supreme court noted:

> "The purpose of the specified waiting period between the hearings in contested trials, obviously in aid of the Act's general purposes, is to encourage the amicable settlement of remaining issues. (Ill. Rev. Stat. 1977, ch. 40, par. 403(e).)" (76 Ill. 2d 53, 60-61.)

And

> "An action for dissolution of marriage affects society, and it involves interests other than those of the parties themselves. (*People ex rel. Doty v. Connell* (1956), 9 Ill. 2d 390, 394.) In the light of the Act's purposes, we consider that the provision for bifurcated hearings and the interval to afford the parties an opportunity to settle amicably remaining questions are not unreasonable conditions in this statutorily created proceeding. (See *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576; *People ex rel. Doty v. Connell* (1956), 9 Ill. 2d 390, 396.) * * *" (76 Ill. 2d 53, 62.)

And the court concluded:

> "We consider that the parties could not waive the provision for an interval between the hearings called for by section 403(e). The language of the legislature is that the court 'shall allow not less than 48 hours for the parties to settle amicably the remaining issues before resuming the trial.' (Ill. Rev. Stat. 1977, ch. 40, par. 403(e).) The provision is mandatory and not discretionary, and the noncompliance in the trial court will require reversal of the judgment as it relates to the second hearing." 76 Ill. 2d 53, 61-62.

*Strukoff* may be factually distinguishable because both the grounds and the remaining issues were contested, whereas here the grounds were not contested. The issue before us narrows to whether the 48-hour waiting period must be observed when the grounds are not contested, a question which was not reached in the factual setting of *Strukoff*.

We note parenthetically that the last quotation from *Strukoff* refers to the "second hearing," which might suggest that the term "contested *trials*" is used in the larger sense of referring to the entire proceedings as

to all issues. This would permit an inference that if any issue is contested the trial is contested. However, it is difficult to say with any certainty that this clearly states the legislative intention. The use of the terms "hearings" and "trials" is often an interchangeable one. See, *e.g.*, Black's Law Dictionary 852, 1675 (4th ed. 1951).

■■■ The 48-hour interval as a minimum in contested trials, as noted in *Strukoff*, is for the laudable purpose of providing the parties an opportunity to settle the remaining issues amicably, with claimed marital misconduct and grievances eliminated from consideration. The provision also, of course, serves judicial economy since, in absence of proof of grounds, further hearings are saved; and if there is proof of grounds, an amicable settlement may also save further hearings. The attorneys who co-authored the Act, in their *amicus curiae* brief filed in *Strukoff*, also note "the psychological impetus of a preliminary decision on the merits." In a footnote they advance the opinion that, even where the grounds are agreed, bifurcation may prevent the parties from injecting provocative evidence not necessary to prove up the grounds, to influence the decision on the remaining issues. However, while this analysis has some persuasion, it appears that there are overriding considerations for the nonapplicability of the waiting period in cases where the grounds are uncontested. It would appear that parties who are willing to go ahead immediately would be in no better position after the uncontested prove-up to negotiate or know the extent of their liabilities than before the prove-up.

In causes such as this case, where the parties have stipulated to the grounds, there would appear to be a minimal opportunity for further provocation or rancor which could affect the decision on the other issues. This seems particularly true under the circumstances of this case in which the complaint has been on file for many months, and where there has been a great amount of pretrial activity including interrogatories, discovery, depositions, numerous conferences between counsel and with the parties and a pretrial conference. It is difficult to see how a further 48-hour "cooling off" period would have any practical effect or how the chance of a settlement would be better after the 48-hour intermediate delay. In fact, the consideration of judicial economy would seem to operate the other way. As previously noted, judicial economy is one of the reasons for having the bifurcated hearing, so that it is not necessary to get into complicated issues if the grounds do not exist; but the practical requirement of rescheduling a case to fit in with busy court calendars and requiring the parties and the attorneys to undergo the time and expense involved in appearing again at a new date would appear to weigh in favor of permitting the parties to agree to go ahead when, as here, the grounds are not contested. We do not suggest that if the parties are not prepared to

immediately proceed to trial on the other issues that the court should be able to refuse a continuance if there are adequate reasons given.

■■ We therefore conclude that under the particular circumstances of this case there was no contested trial involved and the procedure followed was not error.

We therefore reach the petitioner's alternative contention that the disposition of the remaining issues was against the manifest weight of the evidence. We cannot agree.

Petitioner first claims that the trial court erred in refusing to assign a nonmarital monetary inheritance to her. She contends that she should have been given a greater interest in the family home in that $10,000 she inherited from her family was used for the purchase, and that the trial court was required to make a specific finding as to the value of the nonmarital monetary estate and to allow for the appreciation in value of the part that she had invested in the home.

Section 503 of the Act provides that marital property includes all property required by either spouse during the marriage except "property acquired by gift, bequest, devise or descent." (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(1).) This section further provides that the court shall award each spouse's nonmarital property to that spouse. Ill. Rev. Stat. 1977, ch. 40, par. 503(c).

The Illinois Supreme Court has held that the use of the terms marital and nonmarital property "is a nomenclature devised to realize an equitable distribution of property upon termination of the marriage." *Kujawinski v. Kujawinski*, 71 Ill. 2d 563, 573 (1978).

■■ There was testimony which the trial judge could find credible that the new inheritance was only $7,000 and that it was not received until a year or more after the purchase of the home. There was also evidence that the entire amount was spent on family bills and expenses and for dental bills for the petitioner. The trial court could therefore reasonably have believed that the monetary inheritance was not invested in the home and that petitioner was not entitled to the appreciation in value; and to find further that releasing petitioner from liability for one-half of the family debt, $7,993 fully accounted for her monetary nonmarital estate.

The decision of the trial court awarding plaintiff a release from liability on the family debt in consideration of her monetary nonmarital estate was fully supported by the evidence. Nonmarital real property that the petitioner had inherited was awarded to her. Further, as to the "marital property," one-half of the value of the equity in the home will be awarded to the plaintiff upon its sale. After reviewing the record we cannot say that the decision was against the manifest weight of the evidence.

■■ ■ We are also not persuaded that the trial court erred in failing to divide the marital property in "just proportions." (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) By ordering the respondent to pay the entire debt, the trial court was in effect awarding petitioner $7,993 to account for her nonmarital monetary estate. Plaintiff should therefore not be awarded a 67% interest in the family home. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) Finally, we are not persuaded that the court erred in failing to provide reasonable support and maintenance for the petitioner and the minor children. The decree awarded the use of the family residence to the petitioner for her use and that of the minor children until the first of the following occurred: the death of the petitioner, her remarriage, or when the youngest child reached the age of 18. The decree further provided that the respondent transfer title to a 1972 Ford Station Wagon to the petitioner and that it be made operable. Also, $100 per month per child was set aside as support, plus an additional $300 per month maintenance award for the petitioner. The wife's fees were also paid for by the husband.

The decision is not against the manifest weight of the evidence. The net income of the wife was $1,260 against a claimed expense budget of $1,603. While the petitioner would be required to reduce her monthly expenses by somewhat over $200, the defendant likewise would have to reduce his expenditures in order to pay the family indebtedness. It should also be noted that the second oldest child was employed full time, living in the marital home, and that two other children were employed part time and living in the marital home, and that none of the children contributed anything to the room and board. At any rate the case appears to be one where the expenses as explained by the parties far exceeded their income; and the trial judge was in the best position to determine the issue. His determination does not appear to be against the manifest weight of the evidence.

The judgment is therefore affirmed.

Affirmed.

GUILD, P. J., and WOODWARD, J., concur.