*In re* MARRIAGE OF LYNN KELLER, Petitioner-Appellant, and GARY KELLER, Respondent-Appellee.

First District (4th Division)   No. 81—1699

Opinion filed August 5, 1982.

Wayne T. Lofthouse and Richard N. Mueller, both of Schiller Park, for appellant.

Feiwell, Galper & Lasky, of Chicago (Michael J. Berger and Craig P. Ehrlich, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

After eight years of marriage, Lynn and Gary Keller obtained a

dissolution of their marriage in July 1981. Lynn appeals from that portion of the judgment of dissolution of marriage pertaining to the valuation and division of marital property, and the award of attorney fees to be paid her attorneys by Gary. The issues presented for review are whether (1) the trial court, after awarding the marital home to Lynn, erred in requiring her to pay Gary for his interest in the home's equity; (2) the trial court's award to Lynn of an interest in Gary's retirement plan was inadequate; (3) the trial court erred in not requiring Gary to account for disbursements from a savings account; and (4) the trial court's award of attorney fees and costs to Lynn's counsel was inadequate.

We affirm the judgment of the trial court.

FACTS

Gary and Lynn Keller were married on October 21, 1972. They have two children, born in 1976 and 1979. In 1979, Lynn filed her petition for legal separation, which was subsequently amended to a petition for dissolution of marriage.[1] In 1981, at the hearing of the cause, the parties stipulated to the majority of the factual issues, including the grounds for dissolution of their marriage.

The evidence and stipulations disclosed that Gary was employed as a truck driver. His gross salary, including base pay and bonus, was $46,800 per year, with a net income of $2212 per month. Lynn had been employed intermittently as a receptionist at a medical center, and ended her latest employment there in November 1980. She had been earning $90 per week at that time. During the marriage, the parties resided in a house they owned in Franklin Park, Illinois. The home was valued at $60,000, and at that time the parties had a net equity of $28,000.

Gary had a Keogh retirement plan, valued at $40,525, which would mature only in the event of Gary's employment termination, permanent disability, attaining the age of 59½, or death. Gary did not have the right to borrow against the plan.

The parties also had a joint savings account, which at one time had a balance of $3000. However, Gary had substantially depleted the account in order to pay for various bills and expenses incurred by both parties.

At the conclusion of the hearing, the trial court entered a judgment of dissolution of marriage. Pursuant to the parties' agreement,

---

[1]Gary's counterpetition for dissolution of marriage was voluntarily dismissed before the final determination of the cause.

the court awarded custody of the two minor children to Lynn, and required Gary to continue to be responsible for their major medical and dental expenses. Gary also was required to maintain the children as beneficiaries of his life insurance policy. The judgment further incorporated the parties' agreement giving Lynn the substantial portion of the personal property.

As for the contested issues, the trial court awarded Lynn the marital home. Gary would receive from Lynn one-half of the home's current equity, $14,000, within six months after the occurrence of any of certain enumerated events: Lynn's remarriage or cohabitation with another person on a resident, continuing conjugal basis; sale of the marital residence; or September 5, 1984. Lynn was also awarded 25% of Gary's retirement plan, $10,125, payable when the plan matured.[2]

In addition, Lynn was awarded unallocated maintenance and child support of $1000 per month for four years, plus 30% of any bonus Gary might receive. After the conclusion of this period, Lynn is to receive child support payments of $400 per month and 25% of Gary's bonuses.

Last, Gary was required to pay all of Lynn's attorney fees and costs. Lynn's attorneys had petitioned the court for fees and costs totalling over $13,300. Gary was ordered to pay $1320, which was in addition to $2434 that had already been paid.

OPINION

I

■ Lynn contends that the trial court erred in dividing the parties' marital property. Initially, we note that section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) provides the court with 10 factors to consider when dividing marital property. The trial court, after considering these factors, has broad discretion in rendering its award, and it is well established that a reviewing court is not justified in substituting its discretion for that of the trial court. *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730.

Lynn first argues that it was error to require her to pay Gary $14,000 for his share of the equity in the marital home, since she will certainly be unable to make this payment when it becomes due within

---

[2]Lynn was granted the option, exercisable within 30 days of entry of the judgment, to receive $3750 immediately. Lynn did not elect to do so. As a result, any issue arising by reason of this alternative award has become moot.

four years. It is claimed that the effect of the court's judgment wil be to force Lynn to sell the home and move at a time when the children remain of tender age. We find this argument unpersuasive.

Section 503(c)(4) of the Act states that, in dividing marital property, consideration should be given to the desirability of awarding the family home for a reasonable period to the spouse having custody of the children. This statutory directive is intended to minimize disruption in the lives of children whose parents have dissolved their marriage. The trial court in the instant case obviously took cognizance of this guideline and awarded the home to Lynn. The only requirement placed upon her was that she pay Gary one-half of the home's present equity within four years. However, Lynn does not have to sell the home or otherwise disrupt the children in order to fulfill this obligation. By allowing several years before Gary must be paid, the trial court properly balanced the needs of Lynn and the children with the right of Gary to share in the home's equity.

■ In *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146, a similar award was upheld. In *Rothbardt,* the sole child of the parties was eight years old at the time of the proceedings. The trial court awarded the marital home to the custodial spouse and required her to pay the husband his equity interest in the property within two years. (See also *In re Marriage of Woolsey* (1980), 85 Ill. App. 3d 636, 406 N.E.2d 1142; *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17; *Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346.) In the present case, we do not believe that the trial court abused its discretion, and that portion of the judgment pertaining to the marital home is affirmed.

## II

Lynn next argues that the trial court improperly divided Gary's Keogh plan. Pursuant to stipulation, the plan was valued at $40,500. The trial court awarded Lynn 25% of the plan's value, $10,125, to be paid to her when Gary receives the fund after it matures.

■ Lynn contends that the trial court did not make sufficient findings concerning the plan's value. We find no merit to this argument. The judgment specifically recited that the plan, valued at $40,500, was marital property, and further stated that the award to Lynn of 25% equaled $10,125. Clearly, the trial court valued the plan in accordance with the parties' stipulation.

■ Furthermore, the trial court's division of this asset was entirely proper under the circumstances. During their marriage, the parties acquired two assets of substantial value, the marital home and

the Keogh plan, in addition to nominal liquid assets, such as cash, which could be divided between the parties. Thus, there were few assets that could have been awarded to Lynn to offset an award of the entire plan to Gary. Additionally, there was uncertainty as to when the plan would be mature.

In *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 663, 397 N.E.2d 511, 519, we affirmed a similar division of a pension plan:

> "In those instances where it is difficult to place a present value on the pension or profit-sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained but the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the nonemployee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid 'if, as and when' the pension becomes payable."

Accordingly, it was proper to award Lynn an appropriate percentage of the retirement plan, to be paid when the funds become available.

■ Lynn also contests the award to Gary of a savings account which, at one time, had a balance of $3000. However, the evidence at trial disclosed that virtually all of the funds in this account had been depleted to pay for Gary's attorney fees and Lynn's charge accounts. As a result, there was little, if any, money remaining in the account which could have been awarded to either party.

In sum, the trial court correctly considered the evidence presented at trial and the parties' stipulations to the nature and value of their assets in arriving at its judgment. We hold that the division of property between the parties, under the circumstances of this case, was a proper exercise of the court's discretion.

### III

Last, Lynn contends that the trial court erred in failing to grant a larger award of attorney fees to her counsel. Lynn's attorneys had requested a total of $13,609 for their fees and costs. After a hearing, the trial court granted an award of $1320, which was in addition to $2434 that Gary had already paid Lynn's attorneys.

■ The award of attorney fees rests in the discretion of the trial court and is not to be disturbed absent an abuse of discretion. (*In re Marriage of Lovell* (1981), 98 Ill. App. 3d 865, 424 N.E.2d 995.) In *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 458-59, 387 N.E.2d 1254, 1260-61, the standards for determining an appropriate award of attorney fees were set forth:

"In addition to the relative financial positions of the parties, the amount of fees to be allowed in a divorce proceeding depends on a consideration of the skill and standing of the attorneys employed, the nature of the controversy, and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter, especially from a family law standpoint; the degree of responsibility involved in the management of the case; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. (See *Collins v. Collins* (1977), 47 Ill. App. 3d 258, 263, 361 N.E.2d 787, 790; *Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 302 N.E.2d 165.) The work for which the compensation is sought must be shown to be reasonably required and necessary for the proper performance of legal services under the circumstances. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576; see *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 282 N.E.2d 680.) The fees allowed should be fair and just to all of the parties involved; namely, the attorney to be compensated, the client, and the person who is required to pay. *Gasperini v. Gasperini; Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661."

■ In the instant case, virtually all of the facts were presented to the court in the form of stipulations, and the issues involved were neither complex nor difficult. After reviewing the entire record in this cause, we conclude that the amount of attorney fees awarded by the trial court was well within the scope of its discretion and is therefore affirmed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON, P. J., and ROMITI, J., concur.