*In re* MARRIAGE OF OLIVE SHEBER, Petitioner-Appellee, and JAMES SHEBER, Respondent-Appellant.

First District (5th Division)   No. 83—162

Opinion filed January 20, 1984.—Rehearing denied February 28, 1984.

Howard Augustus, of Chicago, for appellant.

Mary C. Schlott, of Arlington Heights, for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Respondent appeals from the denial of his motion to vacate the final judgment entered in an action for dissolution of marriage. He contends that the trial court abused its discretion in (1) refusing to set aside the default judgment entered against him; (2) failing to (a) bifurcate the proceedings as required by section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 403(e)), or (b) provide additional notice to him pursuant to section 405 of that Act (Ill. Rev. Stat. 1981, ch. 40, par. 405); (3) failing to fairly apportion the marital property; and (4) requiring him to pay maintenance.

The parties were married on June 19, 1965, and had three children: Carolyn, born May 11, 1966; Andy, born July 27, 1968; and Laura, born May 12, 1975. Petitioner, 41 years old, is employed as a housekeeper and earns approximately $140 per week. Respondent, 45 years old, is a mechanical design engineer and earned $22,000 per year until he was discharged from his employment on August 12, 1982. He was unemployed at the time of trial.

Petitioner filed her petition for dissolution of the marriage on July 21, 1980, alleging extreme and repeated physical and mental cruelty on respondent's part, and seeking custody of the children, maintenance and child support, sole ownership of the marital home, and an equitable distribution of the remainder of the marital property. Respondent denied the allegations, and it appears from the record that he filed a counterpetition, but no copy thereof has been provided on appeal. Trial of this action did not take place until September 8, 1982,

and a summary of some of the proceedings which caused the delay is pertinent to the issues before us:

July 29, 1980: Petitioner is granted exclusive possession of the marital home pending a final hearing, and respondent is directed to pay 40% of his net income as temporary unallocated maintenance and child support for 120 days.

February 18, 1981: On petitioner's motion, respondent's visitation with the children is restricted, and a guardian *ad litem* (the guardian) is appointed; the matter of visitation rights is continued several times by agreement, to afford the guardian an opportunity to interview all parties.

May 5, 1981: The order for temporary unallocated family support is reinstated on motion of petitioner, and she is granted a judgment for $381 in arrearages.

July 21, 1981: By agreement, the matter is set for trial on October 26, 1981.

July 22, 1981: Respondent's attorney withdraws. Substituted counsel is not secured until December 15, 1981.

October 26, 1981: Trial is reset for January 12, 1982, and respondent is directed to cooperate in preparation of the pretrial memorandum.

December 15, 1981: Substituted counsel files his appearance for respondent, and an extension of time is granted to enable him to become familiar with the case.

December 17, 1981: Petitioner moves for sanctions because respondent failed to comply with the October 26 order to cooperate. Respondent does not appear.

December 28, 1981: Respondent's response and counterpetition are stricken as sanctions. Respondent fails to appear.

January 5, 1982: The December 28 order is vacated, and respondent is ordered to pay a sum to petitioner's attorney as a sanction. Trial is rescheduled for February 22, 1982, at respondent's request.

January 19, 1982: After *in camera* interviews with the children, at which all parties are represented by counsel, the court restricts respondent's visitation rights and orders that the entire family undergo psychotherapy.

February 22, 1982: Trial is reset for April 1, 1982.

February 23, 1982: Respondent's visitation rights are suspended for failure to comply with the court's order to arrange for psychological counseling.

March 23, 1982: Respondent's motion for resumption of visitation is denied, and he is again ordered to arrange for family counseling.

April 1, 1982: Respondent's attorney moves to withdraw, citing respondent's failure to cooperate. Trial is delayed, and the motion is granted on April 19, 1982. Substituted counsel is not obtained until October 8, 1982.

May 19, 1982: Trial is delayed until June 28, 1982.

June 28, 1982: Respondent requests a continuance because he has not yet retained new counsel. Trial is rescheduled for August 19 for hearing on the grounds and August 23 and 24 for hearing on the remaining issues when respondent refuses to waive bifurcation. Respondent is admonished that no further continuances will be granted.

August 6, 1982: The case is reassigned, and a new trial date of August 18, is set at petitioner's request.

August 18, 1982: Trial is reset for September 8, 1982.

On September 8, respondent failed to appear despite having received notice that the final hearing was set for that date. The trial court was informed that respondent knew of the hearing and stated that he would not appear because he was opposed to the divorce and would not cooperate. At the request of petitioner and the guardian, the trial court proceeded to a hearing on both the grounds and the property and custody issues. Petitioner testified in pertinent part that on April 25, 1980, without cause or provocation, respondent threw her against a wall; on May 20, 1980, he struck her with his fist when she interfered with the threatened physical punishment of their oldest child; and on May 22, 1982, he pushed her several times because she had taken money from the house to pay for a cab when he took her car keys, preventing her from going to work. In addition, respondent's conduct toward the children was extremely objectionable, but whenever she sought to interfere he would strike her. Petitioner further testified, with regard to the contested property issues, that the marital home, purchased in May of 1971, had an appraised value of $65,000 and was subject to a $15,500 mortgage. It was in need of substantial repairs for some time before respondent moved out in August of 1980, but he refused to provide the necessary funds. They had fur-

niture in the home, part of which respondent took with him to furnish his apartment. Petitioner also stated that they had three cars—a 1963 Rambler, which she purchased prior to the marriage, and a 1969 Ford station wagon and a 1973 Javlin, purchased during the marriage. Respondent was employed as a mechanical designer, earning $22,000 per year, until he was fired on August 12, 1982. He had applied for unemployment compensation, but petitioner stated that she did not know how much he would receive. She was employed as a housekeeper and earned approximately $140 per week. Finally, petitioner testified that respondent had not paid the $381 judgment for arrearages entered May 5, 1981, nor had he complied with the temporary order directing him to pay her 40% of his net income since August 12, 1982. The total arrearages were $2,187—including the $381 judgment.

With regard to custody and visitation, the guardian made the following recommendations based on his interviews with respondent and the children, the *in camera* examination of the children by the court, and respondent's refusal to undergo psychological counseling: that petitioner be given custody of the children and be awarded the marital home to insure an adequate dwelling for them; that the parties' son or an adult be present during any visitation between respondent and the youngest child; that respondent not be allowed to visit in the marital home; that visitation be allowed no more than once a week for a period not to exceed five hours; that no overnight or extended summer visitation be allowed; that respondent be restrained from removing the children from the court's jurisdiction; and that the oldest child be allowed to decide for herself whether she wished any visitation with respondent.

The trial court found that petitioner had established grounds for dissolution of the marriage, and granted custody of the children to her on the guardian's recommendation. The court further noted that it had read portions of the transcript of the *in camera* hearing and found that there were "very serious reasons why there should be very limited visitation on the part of the respondent"; therefore, it adopted the visitation recommendations of the guardian. The court also ordered that respondent continue to pay 40% of his net income "as child support," the minimum payment to be $76 per week, based on unemployment compensation of $190 per week. Petitioner was awarded the 1963 Rambler as her nonmarital property, the marital home, and the furnishings therein. Respondent was awarded the other two cars, the furnishings in his apartment, and the personal items which he had not yet removed from the marital home. The court further found that respondent was $2,187 in arrears in payment of tem-

porary support and maintenance.

On October 8, 1982, new counsel entered an appearance for respondent and moved that the default judgment be vacated. No copy of the motion appears in the record, and the transcript of the hearing on that motion does not indicate what grounds were set forth in support thereof. The trial court found that the motion was without merit and entered the final judgment for dissolution which incorporated the prior findings and orders of the court. The written decree provides that respondent shall pay 40% of his net income "as unallocated child support and maintenance," and that petitioner would be "barred from receiving maintenance *** subsequent to the youngest child of the parties reaching the age of 18 and having completed high school." By agreement, petitioner was ordered to assume sole responsibility for payment of her attorney fees, and her attorney was granted a $4,000 lien against the marital residence.

Within 30 days, respondent filed a verified petition to vacate the final judgment, alleging that he had called petitioner on September 8, told her he was ill and unable to appear in court, and asked her to obtain a continuance. Respondent further contended therein that certain testimony of petitioner during the hearing was false, maintaining in pertinent part that petitioner earned $160—not $140—per week, and that, contrary to her representations, he was not currently receiving unemployment benefits. He requested that the court vacate the judgment or, in the alternative, modify the property distribution. In her verified response, petitioner alleged that respondent did not contact her personally prior to the September 8 hearing; that he told their oldest child that he knew of the hearing and did not intend to appear because he was opposed to the divorce and would not cooperate further; and that respondent never informed anyone that he was ill or that he wanted a continuance of the hearing. Petitioner further stated that due to the nature of her employment, her income varies; that she has made as much as $160 per week on only a few occasions; and that she had no proof that respondent was then unemployed or not receiving unemployment compensation.

At a hearing on the motion, the trial court noted that no issues were presented which had not been ruled upon in its denial of the October 8 motion to vacate, and that respondent had failed to present a meritorious excuse for his failure to appear at or properly seek a continuance of the September 8 hearing. It further stated that the award of the marital home to petitioner was justified under the circumstances, and any necessary adjustments in the order for child support would be more properly addressed by a post-decree motion to modify

than by a motion to vacate the judgment. Respondent's motion was denied, and this appeal followed.

OPINION

We first address respondent's contention that the trial court abused its discretion in refusing to vacate the default judgment against him and schedule a trial of all issues. He argues that this ruling was improper because it deprived him of an opportunity to present evidence concerning the contested custody and property issues.

■ Pursuant to section 2—1203(a) of the Illinois Code of Civil Procedure, the trial court may, in its discretion, set aside any default, either before final judgment is entered or within 30 days thereafter (Ill. Rev. Stat. 1981, ch. 110, par. 2—1203(a)); however, the standard in reviewing that decision is not merely whether that discretion has been abused, but "whether substantial justice is being done between the litigants and whether, under the circumstances of the case, it is reasonable to compel the other party to go to trial on the merits" (*In re Marriage of Kopec* (1982), 106 Ill. App. 3d 1060, 1062, 436 N.E.2d 684, 686). Thus, it is no longer required that the movant show a meritorious defense or present a good excuse for failure to appear in court in order to obtain a vacature, although the court may still consider those factors (*Peoples Gas Light & Coke Co. v. Flisk* (1981), 97 Ill. App. 3d 1123, 424 N.E.2d 39) as well as any delays in the proceedings or failure to comply with court orders (*Francone v. Weigel Broadcasting Co.* (1979), 79 Ill. App. 3d 991, 398 N.E.2d 1114) in determining whether a motion to vacate should be granted.

■ In the instant case, we have examined the record before us and respondent's arguments and believe that substantial justice has been done. With regard to maintenance and child support, respondent argues that, had he been permitted to present testimony, he would have shown that petitioner told him she made $160—not $140—per week, and that he was not receiving unemployment compensation at the time of trial, making the amount of arrearages stated in the judgment inaccurate. However, petitioner explained that her income varies, and that the $140 stated was her average weekly wage. Petitioner also offered to modify the judgment for arrearages if respondent presented evidence that the amount thereof stated in the judgment was erroneous; *i.e.*, if he presented proof that he was not receiving unemployment compensation. Respondent failed to present any such proof when given the opportunity to do so. Moreover, these are matters which can be addressed by a post-decree motion for modi-

fication of the support order pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 510), if necessary; they do not require vacation of the final decree.

With regard to custody and visitation, we note that the trial court considered the recommendations of the guardian, a neutral party appointed to protect the interests of the children in this matter. The record here also includes the transcript of the court's *in camera* examination of the children, at which respondent was represented by counsel, which discloses very serious reasons for granting custody to petitioner and restricting respondent's visitation rights. It appears, therefore, that the trial court had ample evidence, independent of anything adduced by petitioner at the September 8 hearing, from which it could determine that it was in the children's best interests to remain with petitioner and have only limited visitation with respondent.

Finally, with regard to property distribution, respondent does not here assert that petitioner's testimony on that issue was false, nor that she omitted any assets. Instead, he maintains that the property which she identified at the hearing was not distributed in just proportions. Since respondent does not seek to present further evidence in this regard, we see no reason to compel petitioner to go to trial. The arguments raised do not involve factual questions, but the trial court's exercise of its discretion.

We have also considered the numerous delays in trial of this matter and respondent's conduct throughout this litigation, and find therein additional support for the trial court's denial of the motion to vacate. In particular, we note that continuances were granted at respondent's request on a number of occasions; that it was necessary to impose sanctions when respondent failed to cooperate in preparing the pretrial memorandum, in direct violation of the court's order; and that respondent repeatedly violated orders regarding temporary support, visitation, and arranging for psychological counseling. Because of respondent's failure to cooperate, trial of this matter was delayed for over two years, and although respondent contends otherwise, there is strong indication that his failure to appear at the September 8 hearing was a deliberate attempt to further delay this matter. It would be unreasonable to subject petitioner to further delays and expense in reaching an end to this litigation, or to reward respondent for his wilful refusal to appear in court after numerous continuances were granted for his sole benefit. Having chosen to forego his opportunity to present evidence, it is our view that respondent should not

now be heard to complain that he was "denied" substantial justice.

Respondent next contends that the trial court abused its discretion in failing to bifurcate the proceedings and require additional notice to him of a hearing on the remaining issues. He initially argues that bifurcation is required by section 403(e) of the Illinois Marriage and Dissolution of Marriage Act, which provides:

"Contested trials shall be on a bifurcated basis with the grounds being tried first. Upon the court determining that the grounds exist, the court shall allow 48 hours for the parties to settle amicably the remaining issues before resuming the trial. *** In cases where the grounds are uncontested and proved as in cases of default, the trial on all other remaining issues shall proceed immediately, if so ordered by the court or if the parties so stipulate, issue on the pleadings notwithstanding." (Ill. Rev. Stat. 1981, ch. 40, par. 403(e).)

Respondent asserts that the trial court should have waited at least 48 hours before proceeding, maintaining that he "could reasonably have assumed," since he once refused to waive bifurcation, that the entire proceeding would not be concluded during the September 8 hearing. He further posits that petitioner would not have been seriously prejudiced by delaying trial of the remaining issues.

■ It is apparently respondent's position that because he had previously manifested his desire to contest all issues, the trial court should have protected his right to do so by bifurcating the proceedings. However, respondent misapprehends the purpose of section 403(e), which expressly provides that bifurcation is unnecessary in the case of default. Section 403(e) was not designed to promote litigation, but to encourage amicable settlement of the remaining issues by eliminating marital misconduct and mutual grievances from consideration. (*In re Marriage of Wiedner* (1979), 75 Ill. App. 3d 1014, 394 N.E.2d 620.) Thus, a waiting period generally would serve no useful purpose where the grounds are not contested, since the discord and animosity which often accompany a contested trial of the grounds would not be present, and judicial economy would better be served under those circumstances by proceeding immediately with the remaining issues. In the instant case, given respondent's conduct throughout the litigation and his refusal to cooperate by appearing at the September 8 hearing, the trial court had no reason to believe that an amicable settlement of the remaining issues would be reached by waiting 48 hours. Respondent's argument before this court shows that no such settlement was likely, for he contends here that the waiting period should have been granted in order to afford him an opportunity to appear and *contest*

the remaining issues. Under the circumstances, we believe that the trial court did not abuse its discretion in failing to bifurcate the issues, since the purpose of section 403(e) would not have been served thereby.

Respondent also argues that additional notice to him was required by section 405 of the Illinois Marriage and Dissolution of Marriage Act, which provides:

"If the respondent is in default, the court shall proceed to hear the cause upon testimony of petitioner taken in open court, and in no case of default shall the court grant a dissolution of marriage \*\*\* unless the judge is satisfied that all proper means have been taken to notify the respondent of the pendency of the suit. Whenever the judge is satisfied that the interests of the respondent require it, the court may order such additional notice as may be required." Ill. Rev. Stat. 1981, ch. 40, par. 405.

■ Section 405 apparently contemplates additional notice only if the trial court is not satisfied that the respondent has received notice of the action. This is clearly not the case here, since respondent not only had notice of the pendency of this action, but by his own admission had notice that the hearing thereon would take place on September 8. Thus, section 405 is inapplicable to the facts before us, and the trial court did not abuse its discretion in proceeding without additional notice. (See *In re Marriage of Kopec* (1982), 106 Ill. App. 3d 1060, 436 N.E.2d 684.) The trial court has a duty pursuant to section 405 to assure itself that the defaulting party had notice; that section does not impose a duty to coax respondent into court.

Respondent further contends that even if the default judgment was properly entered, the trial court's disposition of marital property therein was unjust under the facts before it. In particular, he maintains that its award of the marital home to petitioner constituted a clear abuse of discretion.

The Illinois Marriage and Dissolution of Marriage Act requires that the trial court divide the marital property "in just proportions" (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)), and it is established that the division need not be mathematically equal (see, *e.g., In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 441 N.E.2d 1277; *In re Marriage of Walsh* (1982), 109 Ill. App. 3d 171, 440 N.E.2d 310); rather, the trial court may in its discretion make whatever distribution it deems equitable under the circumstances (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 445 N.E.2d 811). On review, we will not substitute our discretion for that of the trial court (*In re Marriage of Keller*

(1982), 108 Ill. App. 3d 556, 439 N.E.2d 44) but are limited to determining whether the trial court fairly considered the evidence and the relevant factors set forth in section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(c); *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811), and the trial court's determination on this issue will not be disturbed unless it has acted arbitrarily (*In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 440 N.E.2d 1028); that is, unless "no reasonable person would take the view adopted by the trial court" (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 207, 445 N.E.2d 811, 814).

In the instant case, each party was awarded a portion of the household furnishings acquired during the marriage, and respondent received two cars purchased with marital funds, but the only marital asset of substantial value—the parties' home—was awarded to petitioner. Relying on *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 405 N.E.2d 1099, respondent argues that because the parties occupied similar financial positions at the time of trial, and it does not appear that petitioner made a greater contribution toward acquisition of the home, the award thereof to her was inequitable. It is true that, in *Miller*, we reversed an order granting the sole asset of value—the marital home—to one of the parties based on the above factors, but in that case both parties were retired and receiving substantially equal social security and pension benefits and had no minor or otherwise dependent children. Thus, the only applicable factors were their contributions to the marriage and their current economic circumstance. Here, however, there are a number of other relevant factors to be considered, including "the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children"; "the \*\*\* vocational skills, employability \*\*\* and needs of each of the parties"; and "the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1981, ch. 40, par. 503(c).

▪ The trial court based its decision here to award the marital home to petitioner on the fact that she has custody of the three minor children. We have found this factor of great importance in a number of cases (see, *e.g., In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 443 N.E.2d 1089; *In re Marriage of Kush* (1982), 106 Ill. App. 3d 233, 435 N.E.2d 921), reasoning that "[t]he adverse effect which dissolution of a marriage has on children is self-evident. Therefore, where possible, children should be afforded continuity in their environment in order to reduce the emotional disruption caused by the

separation of their parents. One of the ways this can be accomplished is by affording the children continued residence in the family home." (*In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, 102, 419 N.E.2d 400, 402.) There can be little doubt in the instant case that dissolution of the marriage has been difficult for these children, given the trial court's finding that the entire family was in need of psychological counseling. For this reason, we find the above cases persuasive, but further note that other factors mandate award of the marital home to petitioner, at least while the minor children are residing with her. It appears from an affidavit filed by petitioner that her monthly expenses in 1980 were $1,018.30—$235.30 of which constituted mortgage payments. At the time of judgment, she could expect a monthly income of approximately $1,000, including the unallocated support and maintenance payments of $76 per week from respondent. If the marital home were sold in order to divide the equity therein, it would still be necessary for petitioner to provide suitable housing for the children, and it is highly unlikely that she could do so for as little as $235.30 per month. Therefore, her monthly expenses would have been even higher, necessitating increased support payments from respondent at a time when he could ill afford to make them and still provide for his own reasonable needs. For this reason, too, it is in the best interests of all concerned that petitioner be allowed to remain in the marital home.

Nevertheless, we believe that these interests may still be served while at the same time providing for an equitable distribution of the marital property. Section 503(c) suggests that the court may award the marital home to the custodial parent or make provision for the right to live therein for a reasonable time. It is our view that some provision for eventual distribution should be made where, as here, the marital home is the sole asset of any value and the noncustodial parent is to pay support and maintenance. (See *In re Marriage of Cabaj* (1983), 118 Ill. App. 3d 789, 455 N.E.2d 822.) However, in the instant case, we believe that a continued joint tenancy between these parties would be a potential source of friction and should be avoided. Therefore, we order that the judgment be modified to provide that should the home be sold before the youngest child is emancipated, respondent shall have a lien on the proceeds of the sale and shall receive 25% of the net proceeds, after taking into account the lien in favor of petitioner's attorney, mortgage payments, taxes paid, repairs made by petitioner, and any arrearages in child support and maintenance. If the real estate is not sold during that period, the trial court shall retain jurisdiction to reconsider an equitable division thereof upon emancipa-

tion of the youngest child. See *In re Marriage of Cabaj.*

Finally, respondent contends that the trial court abused its discretion in requiring him to pay maintenance. He argues that although petitioner is entitled to child support as custodial parent, any provision for maintenance was an abuse of discretion because he was unemployed at the time of judgment and receiving only $190 per week in unemployment compensation.

Under section 504(a) of the Illinois Marriage and Dissolution of Marriage Act, the trial court may grant maintenance only if it finds that the spouse seeking it lacks sufficient property to provide for his or her reasonable needs, and either cannot support himself or herself through suitable employment or otherwise lacks sufficient income. (Ill. Rev. Stat. 1981, ch. 40, par. 504(a).) The award thereof is a matter within the trial court's sound discretion (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005), and its decision will not be overturned on appeal unless it amounts to an abuse of discretion or is against the manifest weight of the evidence (*In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 436 N.E.2d 228).

Initially, we note that the family support awarded in the instant case is unallocated. We have no way of determining what portion thereof was intended as maintenance, an important consideration since respondent does not dispute the propriety of requiring him to pay child support. Moreover, it is possible, as petitioner argues, that the support payments were so structured in order to provide a tax advantage to respondent. Of course, the trial court may consider the tax consequences in reaching its determination (*In re Marriage of Belluomini* (1982), 104 Ill. App. 3d 301, 432 N.E.2d 958), and there is some indication that it did so here, since it referred to the amount in question as "child support" throughout oral proceedings but provided in the final, written decree that it should be paid "as unallocated child support and maintenance."

■ However, even assuming that some portion thereof is intended as maintenance, we do not believe that the trial court abused its discretion in this regard. At the time of judgment, petitioner was earning an average income of $140 per week; respondent was receiving $190 per week in unemployment compensation, but in the past had earned $22,000 per year through employment. Petitioner's affidavit, as noted above, listed household expenses of slightly over $1,000, and we note that the expenses claimed, which included those for the children, appear to be reasonable. Thus, her family expenses exceeded her income by approximately $400. Even where a spouse is employed, the trial court may award maintenance if the income earned there-

from is insufficient to provide for reasonable needs. (See, *e.g., In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, 419 N.E.2d 400.) Here, the record indicates that the approximately $400 petitioner would receive from respondent would just cover the difference between her income and the family's reasonable needs; thus, whether it was termed "child support" or "unallocated support and maintenance," the award is neither an abuse of discretion nor contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the trial court is affirmed as modified.

Affirmed as modified.

LORENZ and WILSON, JJ., concur.