*In re* MARRIAGE OF HELENA DREWITCH, Petitioner-Appellant, and ED-
MUND DREWITCH, Respondent-Appellee.

First District (6th Division)   No. 1—92—0439

Opinion filed June 10, 1994.

Brenda A. Szeja, of Chicago, for appellant.

James A. Corrigan, of Chicago, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

After many years of pretrial proceedings, the trial judge granted the respondent, Edmund Drewitch, what both parties label a default judgment of dissolution from his wife, Helena Drewitch. The judge denied Helena's motion to vacate the judgment. Helena appeals.

Edmund was born in 1913 and Helena in 1930. They met in 1979 or 1980 and married in July 1980. Helena had married and divorced three times before she married Edmund. According to Edmund, Helena spent only 110 days living with him in his Urbana, Illinois, home between their marriage in 1980 and their separation in 1982. Helena spent the rest of 1980, 1981, and 1982 living with her sons in Chicago or vacationing in Poland. Helena admitted that, in 1981, she rented an apartment in Chicago and "was just visiting" Edmund whenever she went to Urbana. Nonetheless, Helena stated that she asked Edmund to transfer half of his Urbana home to her and was angry with him until he made her a joint tenant of the home. Edmund testified that Helena took valuable furniture and other personal property from this home without his permission.

In May 1982, Helena filed a petition for dissolution of the marriage. Edmund answered the petition and filed a counterpetition for dissolution. The record contains a file-stamped copy of Helena's answer to Edmund's counterpetition, but no certificate of service or other proof that this answer was ever served on Edmund or his attorneys.

On September 8, 1982, Judge Buckley ordered Edmund to pay Helena the higher of $750 or 25% of his income, each month, as temporary maintenance. Edmund paid Helena temporary maintenance of $750 each month until October 23, 1991, when Judge Maragos entered the judgment of dissolution. Thus, Edmund paid Helena $81,750 over a period of nine years.

Helena received many continuances while her petition was pending. The record on appeal is composed primarily of orders granting Helena's numerous requests for continuances. Moreover, she admits in her brief that she has "a history of changing attorneys and [failing] personally to appear in court." In fact, she had six attorneys during the trial court proceedings and often received long continuances to obtain new counsel. The trial judge found that she fired or "caused to withdraw" all of her attorneys. At least three of her attorneys withdrew because Helena refused to cooperate with them. One attorney stated that Helena told him she would not attend scheduled trial dates because she would be in Florida, that Helena refused to follow his advice, and that she refused to settle the case, insisting on "requests for settlement [which] are so unreasonable and unrealistic that this matter has been pending in excess of eight years."

Helena's petition was dismissed for want of prosecution once in 1985 and twice in 1986, although these dismissals were vacated. In 1990, Judge Sheldon Gardner refused to rule on Helena's request that Edmund pay many of her medical expenses because Helena had not complied with the judge's order and Edmund's insurance company's request that she be examined by one of several specific physicians. In 1991, Helena initially ignored a notice compelling her to appear at a hearing before Judge Maragos. She appeared before Judge Maragos on July 11, 1991, only after receiving a second notice compelling her attendance, and was admonished by the judge to appear at the trial set for October 23, 1991.

Nonetheless, on October 17, 1991, Helena sent Edmund's attorney a letter asking the attorney to give Judge Maragos a note from her doctor and to tell Judge Maragos that she could not come to court on October 23. She asked the attorney to obtain an "extension" of at least one month and a court date "not early in the morning, if possible." The doctor's note asked that Helena be excused from any "court appearance for about one month." The note explained that Helena had no new illness, just an "exacerbation of her illnesses," and did not state that this was a recent or sudden change in the condition which kept her from court in May 1991. Edmund's attorney sent a letter to Helena immediately, informing her that he had called

Judge Maragos, that Judge Maragos "does not grant any continuances by telephone," and that Helena should appear on October 23 or "have someone [in court] who can testify competently concerning [her] physical condition." Helena did not appear on October 23. Instead, she sent her son's girlfriend, Margaret Turska. Turska told the judge that Helena asked her "to deliver papers" to the judge. Turska was not an attorney or a medical professional. Turska handed the judge the doctor's note and Helena's letter to Edmund's attorney. Edmund testified that Helena had called him the night before the hearing and "told [him] not to appear" because "she was sick or something." In response, the judge explained:

"This matter is an '82 case and this is the fourth or fifth attorney she's had, and she's fired all of them. Now, she sends a letter and she doesn't—she wants it continued. I will not give it to her. I told her the last time she was in court this was her last chance to get enough time to appear here, so where is she now?

* * *

*** She's had four or five lawyers. I lost count. She had a continuance, and the last time, she had an outstanding lawyer, but she won't cooperate and she is her own judge and own lawyer. She has made a mockery of the Court and we cannot continue this matter anymore. She's had more times in court than she's been married to the man, so as a result, I cannot continue the case.

* * *

Tell her that the case has gone—She did have a petition. She just sent a letter and she does that all the time. She's not believable. So just tell her that I'm going ahead with the case *** I'm going ahead to a hearing today."

The judge then heard Edmund's testimony regarding the grounds alleged in Edmund's counterpetition, but did not hear evidence or make any determination regarding the property issues. The judge granted Edmund's counterpetition for dissolution on the basis of willful desertion. In his order, the judge found that Helena was in default for failing to appear at trial. He set a trial date of December 9, 1991, for the property issues.

On November 12, 1991, Helena filed a motion to vacate this judgment. The motion does not cite any section of the Code of Civil Procedure, but does assert that it was filed within 30 days of the judgment. Edmund responded to this motion, arguing that Helena had made a mockery of the judicial process and did not deserve to have the judgment vacated.

On December 9, 1991, the planned property issue trial date, the judge denied Helena's motion to vacate. Also, he granted Edmund

leave to file a "motion to confirm the default." Helena has not placed a transcript of the December 9 proceedings into the record.

In his "motion to confirm the default," Edmund asserted, for the first time, that Helena had never answered the counterpetition and thus was in default. Edmund alternatively argued that Helena was in default because she failed to appear on October 23, after the judge ordered her to do so. In response, Helena conceded that she had never answered the counterpetition, but asserted that the judgment should be vacated because she moved to vacate within 30 days of its entry and because Edmund had proceeded for many years as if she had answered the counterpetition.

On January 6, 1992, the trial judge held a hearing on these motions. Edmund's attorney argued that the judgment was proper because Helena did not appear at trial and because she did not answer the counterpetition. Helena did not object to this characterization of the facts. Without giving his reasoning, the judge confirmed the judgment. The judge also held a settlement conference regarding the property issues, and the parties reached a property settlement. Thus, contrary to Helena's assertions here, the property issues were not decided in her absence.

Helena filed a timely notice of appeal, stating that she was appealing both the October 23 judgment and the January 6 confirmation of the purported default. Helena asks us to review the original judgment, the December 9 denial of the motion to vacate, and the January 6 confirmation of the judgment. Edmund asserts that Helena may not contest the validity of the December 9 order denying the motion to vacate because it was not listed in the notice of appeal.

■ We agree with Helena that, by appealing the original judgment order and the January 6 order confirming the judgment, Helena placed the propriety of the denial of the motion to vacate before this court. The purpose of a notice of appeal is not to specify the exact points to be relied upon for reversal, but simply to inform a party who has received a favorable judgment that the opposing party desires review of the case. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380.) Therefore, the notice should be liberally construed as a whole and strict compliance with technical requirements is not fatal where the notice adequately informs the opposing party of the nature of the relief sought. (*Hamer v. Board of Education of Township High School District No. 113* (1978), 66 Ill. App. 3d 7, 383 N.E.2d 231; see also *McMahon v. McMahon* (1981), 97 Ill. App. 3d 448, 422 N.E.2d 1150.) We believe that Helena sufficiently notified Edmund that she was appealing the judge's denial of her motion to vacate the judgment when she appealed the judge's confirma-

tion of his decision to enter judgment against her. Therefore, we will review the orders of October 23, December 9, and January 6.

■ Helena asserts that she could not be found in default because she properly filed an answer to Edmund's counterpetition. She states that the sole reason the judge entered the judgment on October 23 was because of "the patent falsehood communicated to the court by [Edmund]" and his attorney that she had not answered the complaint. Further, she contends that this alleged "misconduct" by Edmund and his counsel "militates in her favor" and requires a reversal. In response, Edmund contends that her answer was, in essence, not an answer because it was never served on him and contains no proof of service in violation of Supreme Court Rule 104(b) (134 Ill. 2d R. 104(b)). See also 134 Ill. 2d R. 11.

We reject Helena's unsupported statements that Edmund acted unfairly or that his counsel was in any way guilty of misconduct regarding her answer. Helena's claim that Edward unfairly obtained the October 23 judgment by making "misrepresentations" regarding her answer must fail in light of the fact that Edmund did not mention the lack of an answer until December 9. Moreover, Helena never served her answer on Edmund or his counsel, and her own trial attorney stated that she had never answered the complaint. It is manifestly improper for her to argue now that the fact the trial judge was never told about the answer was somehow the fault of an attorney who was never served with the answer.

We similarly reject her attempt to blame the trial judge for her failure to properly serve the answer. Without citation to authority, she claims that "the court is ultimately responsible for knowledge of the contents of its own files," that "there is absolutely no excuse for the court being uninformed and/or misinformed," and that "*somebody* should have obtained" the trial court file, searched the entire file, and discovered this unserved answer. (Emphasis in original.) Helena, not the trial judge, was responsible for presenting her case. A trial judge may not be an advocate for a party, as Helena requests, but must take the case as the parties have presented it. See, *e.g.*, *In re Estate of Divine* (1994), 263 Ill. App. 3d 799, 809–10.

Finally, we judge that Helena cannot change her position in the middle of this case and now assert that the answer was, in fact, served on opposing counsel. In her reply brief, she contends that the answer might have been served and promises us that she "is attempting a search of the trial court record," presumably to obtain some proof of service. There is no proof of service in the record before us, and we will not decide this case on the basis of Helena's conjecture. Moreover, in the trial court, she admitted through her

attorney that she did not answer the complaint. Helena's request that we not construe her attorney's admission as a statement made by Helena flies in the face of well-settled law. Unquestionably, a party on appeal is bound by her statements, including the statements of her attorney, made in the trial court. (See *Taylor v. County of St. Clair* (1974), 57 Ill. 2d 367, 312 N.E.2d 231.) Therefore, we reject Helena's assertions that the answer was, in fact, properly served and that she is not bound by the statement of her attorney that she had not answered the complaint.

■ We also hold that the question of whether Helena properly answered the counterpetition is legally irrelevant on appeal, because the October 23 judgment was not a default judgment. We agree with Helena that a default judgment generally may be granted only when the defaulted party fails to file an answer or an appearance (see Ill. Rev. Stat. 1991, ch. 110, par. 2—1301(d)), and that the failure of a party to appear for trial generally does not justify the imposition of a default (*Ryan v. Bening* (1978), 66 Ill. App. 3d 127, 383 N.E.2d 681). Nonetheless, we hold that the judgment entered by the judge on October 23, despite its language that Helena was in default, was actually an *ex parte* judgment and not a default judgment.

When a party has filed an appearance and an answer, but fails to appear at the trial, the other party must prove his case and cannot simply obtain judgment by default. (*Ryan*, 66 Ill. App. 3d at 131; 4 R. Michael, Illinois Practice § 42.4, at 351 (1989).) This is the course of action which was followed here, where the judge heard extensive testimony by Edmund before granting him a judgment of dissolution on October 23. When this proper procedure is followed, an incorrect notation calling the resulting *ex parte* judgment a default is not fatal. *Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 435 N.E.2d 852; 4 R. Michael, Illinois Practice § 42.4, at 351 (1989); see also *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.

In *Teitelbaum*, the defendant's attorney did not appear for a scheduled trial, but instead called the judge's secretary and requested a continuance. The trial judge heard evidence in the absence of the defendant and his attorney and entered what he called a "default judgment" against the defendant. The appellate court held that this order could not be a default, because the defendant had appeared and answered the complaint, but instead was an *ex parte* judgment. (*Teitelbaum*, 106 Ill. App. 3d at 658-59.) Nonetheless, the *Teitelbaum* court stated that the "inaccurate terminology as an order of default does not affect the otherwise valid judgment for plaintiff." (106 Ill. App. 3d at 659.) The court also treated the defendant's motion to

vacate the default as a motion to vacate a judgment under section 2—1301 of the Code of Civil Procedure, which allows motions to vacate any type of judgment within 30 days of entry. See Ill. Rev. Stat. 1991, ch. 110, par. 2—1301.

■ Similarly, we hold that the judge's decision to hear evidence on October 23 in Helena's absence was actually a denial of her request for a continuance, as made through Turska and Helena's letter to Edmund's attorney. As we have noted, the judge was not informed that Helena had not answered the complaint on October 23 and made no mention of this fact in his remarks or order. The substance of the order and the judge's remarks to Turska make it clear that he was denying what he construed as yet another continuance request by Helena. Then, as required, he held an *ex parte* hearing. After the hearing, still with no mention of the answer, he entered an *ex parte* judgment against Helena based on his findings from Edmund's testimony. Therefore, like the *Teitelbaum* court, we hold that this order should not be analyzed as a default judgment. Similarly, we will analyze Helena's motion to vacate as a general motion to vacate under section 2—1301.

Also, like the *Teitelbaum* court, we hold that Helena's attempted request for a continuance was properly denied and that the mislabeling of the October 23 *ex parte* order does not affect the validity of the judgment against Helena. Even if Helena's letter requesting an "extension" could be construed as a proper motion for a continuance (see 134 Ill. 2d R. 231), it was correctly denied. A moving party must give "especially grave reasons for continuance once a case has reached the trial stage because of the potential inconvenience to *** the parties and to the court." (*Teitelbaum*, 106 Ill. App. 3d at 656.) The decision to grant a continuance is within the discretion of the trial judge. Ill. Rev. Stat. 1991, ch. 110, par. 2—1007; 134 Ill. 2d R. 231.

In this case, the judge found that Helena wanted to be her "own judge" and "made a mockery of the Court." Helena had been repeatedly told to appear in court and to otherwise comply with court orders; she paid no attention. She had already received countless continuances for new attorneys. She waited until mere days before trial to contact Edmund's attorney about her request for a continuance of the October 23 hearing, even though there is no evidence that this was a sudden "exacerbation" of an illness she knew about in May 1991. Moreover, the trial judge found her "not believable." Under these circumstances, we believe that the trial judge acted within his discretion when denying Helena's belated request for a continuance. Therefore, the October 23 *ex parte* order granting Edmund judgment was proper.

■ For similar reasons, we hold that the judge properly denied Helena's motion to vacate his order. As noted, Helena has failed to place a report of proceedings from the December 9 hearing into the record. Citing substantial authority, Edmund asks us to hold that, in the absence of this transcript, there is no basis to reverse the judge's order. Helena tells us that obtaining a report of proceedings at this point would be "redundant and further unnecessarily time consuming" but states that, if we "desire to consider it," she will move to supplement the record with a report of proceedings.

Of course, a party may not wait for us to "desire" a piece of information before placing it in the record on appeal. It is the appellant's burden to insure the completeness of the record at the beginning of an appeal. (*Foutch*, 99 Ill. 2d at 391-92; see also *Thanopoulos v. Pickens* (1980), 87 Ill. App. 3d 906, 409 N.E.2d 477.) Moreover, when the appellant provides this court with "no transcript of the hearing on the motion to vacate ***, there is no basis for holding that the trial court abused [its] discretion in denying the motion." (*Foutch*, 99 Ill. 2d at 392.) Nonetheless, Helena has placed the January 6 transcript into the record. Therefore, we choose to reach the merits of this question, but must resolve "[a]ny doubts which may arise from the incompleteness of the record *** against the appellant." *Foutch*, 99 Ill. 2d at 392.

Helena correctly notes that a party seeking vacation of a judgment under section 2—1301 is no longer absolutely required to show a meritorious defense or a reasonable excuse for failure to appear at trial. (*Teitelbaum*, 106 Ill. App. 3d at 659.) Nonetheless, "the court may still consider those factors [citation] as well as any delays in the proceedings or failure to comply with court orders." (*In re Marriage of Sheber* (1984), 121 Ill. App. 3d 328, 334, 459 N.E.2d 1056.) The "overriding consideration now is whether or not substantial justice is being done between the litigants and whether it is reasonable under the circumstances to compel the [party receiving the favorable judgment] to go to trial on the merits." *Durham v. Rockford Mutual Insurance Co.* (1988), 169 Ill. App. 3d 211, 213, 523 N.E.2d 670.

Helena's entire argument that substantial justice was not done in this case is composed of citation to the rule that a party need not always show a meritorious defense to vacate a judgment and an unsupported statement that holding a trial would not have seriously prejudiced Edmund because he is an Illinois resident. She does not attempt to show that she had any excuse for her admitted failures to follow court orders and appear for trial. In response, Edmund notes that he is 81 years old and that he waited many years for a resolution of this case because of Helena's delays.

We reject Helena's argument that the mere fact Edmund is an Illinois resident is sufficient to show that he would not be prejudiced by proceeding to trial, especially where Edmund does not reside in Cook County. None of the cases cited by Helena stands for the proposition that the fact of Illinois residence alone provides a ground to reverse a trial judge's denial of a motion to vacate. See *Andreasen v. Suburban Bank* (1988), 173 Ill. App. 3d 333, 527 N.E.2d 595 (a case where the propriety of granting the motion to vacate was not even questioned); *Durham*, 169 Ill. App. 3d at 213-14.

Moreover, we agree with Edmund that substantial justice was done in this case, and that it would be unreasonable to compel him to go to trial. In a case Edmund relies on, *Sheber*, the trial judge determined custody and property issues in the absence of the husband, who refused to attend trial. The court held that the husband's motion to vacate was properly denied because he caused a delay of two years in the trial court, received many continuances, and frequently refused to comply with court orders. (*Sheber*, 121 Ill. App. 3d at 335.) The *Sheber* court explained: "It would be unreasonable to subject petitioner to further delays and expense in reaching an end to this litigation, or to reward respondent for his wilful refusal to appear in court after numerous continuances were granted for his sole benefit." 121 Ill. App. 3d at 335.

We find *Sheber* controlling. The delay caused by Helena was much longer than the two-year *Sheber* delay, and the trial judge in this case did not determine any property issues in Helena's absence, making this an even more compelling case for affirmance. Edmund waited many years for the resolution of this case, does not live close to the court, and is now 81 years old. During almost the entire pendency of the case, he paid Helena $750 each month. Helena has made no attempt to justify her absence on October 23 or her abusive conduct in the trial court. To allow Helena to further extend these proceedings would only reward her for what the trial judge reasonably called making "a mockery of the Court." Accordingly, we hold that substantial justice was done and that the judge properly denied her motion to vacate his *ex parte* order and properly confirmed the judgment.

■ Finally, Helena argues that she was denied due process because the basis for the judge's order of dissolution was desertion, while the ground pleaded in the counterpetition was cruelty. We reject this argument for two reasons: first, Helena waived this issue, which was never raised in the trial court; and second, she admitted that the issue of desertion was raised in the counterpetition.

Throughout the lengthy trial court proceedings, Edmund asserted

that Helena spent only 110 days living with him and had deserted him. Helena never objected to these assertions. She also never argued in the trial court that the October 23 judgment was improper because it was based on desertion. By not raising this issue at trial, she waived any objection to the alleged lack of desertion in the counterpetition. See, *e.g.*, *Snow v. Dixon* (1977), 66 Ill. 2d 443, 362 N.E.2d 1052.

Additionally, we find that Edmund's counterpetition includes allegations that Helena deserted him. In fact, in her response to Edmund's motion to confirm the judgment, Helena said: "The Respondent filed a counter-petition alleging, among other things an oral agreement *** which Petitioner breached by deserting Respondent." Thus, Helena admitted in the trial court that Edmund pleaded desertion. She is bound by that admission on appeal. See *Taylor v. County of St. Clair* (1974), 57 Ill. 2d 367, 312 N.E.2d 231.

For these reasons, we reject all of Helena's assertions and affirm the judgment of the circuit court.

Judgment affirmed.

McNAMARA and GIANNIS, JJ., concur.