*In re* MARRIAGE OF LINDA W. BRENNER, Petitioner-Appellant, and BRUCE H. BRENNER, Respondent-Appellee.

First District (3rd Division)    No. 79-1731

Opinion filed March 25, 1981.

Kirsh, Nadler & Berman, Ltd., of Chicago (Sanford Kirsh and J. Scott Bonner, of counsel), for appellant.

Goldenson, Kiesler, Berman & Brenner, of Chicago (Nathan G. Brenner, Jr., and Bruce Farrel Dorn, of counsel), for appellee.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

The trial court entered an order which provided for dissolution of the marriage of petitioner, Linda Brenner, and respondent, Bruce Brenner, and disposed of various contested matters. On appeal, petitioner challenges several parts of this order, claiming that the court erred by (1) denying her the right to continue residing in the marital home; (2) denying her maintenance; (3) failing to require respondent to reimburse her for one-half of the proceeds derived from the sale of jointly owned stocks;

and (4) requiring respondent to pay only $1,500 towards her attorney's fees. We reverse and remand with directions.

We first address the question of the marital residence. Although neither party requested that the marital home be sold, the court ordered that the house be placed for sale immediately and that the proceeds from the sale be divided equally between the parties after respondent received certain credits based on mortgage payments which he had made. Petitioner maintains that as the custodial parent of the parties' two minor children, she should be permitted to remain in the marital home until she remarries or until the youngest child (age 12 at the time of the trial) reaches majority.

Section 503(c)(4) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(4)) provides that "the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children" is a relevant factor in dividing marital property. The adverse effect which dissolution of a marriage has on children is self-evident. Therefore, where possible, children should be afforded continuity in their environment in order to reduce the emotional disruption caused by the separation of their parents. One of the ways this can be accomplished is by affording the children continued residence in the family home.

■■ Of course, there are other factors to consider with respect to the marital residence and the division of property. However, we conclude that in this case, a provision should be made for the continued use of the marital residence by petitioner and the children for a reasonable period of time. Also, a provision for the division of the proceeds from the eventual sale of the marital home should be made, taking into consideration maintenance, the division of the remaining property and attorney's fees.

■■ The next question we consider is the ruling of the trial court denying petitioner maintenance. Maintenance may be awarded where a spouse lacks sufficient property to provide for reasonable needs and is unable to be self-supporting through appropriate employment. (Ill. Rev. Stat. 1977, ch. 40, par. 504(a); *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 657, 409 N.E.2d 321, 326.) These criteria are not absolute. (See *In re Marriage of Schulte* (Mo. App. 1977), 546 S.W.2d 41, 49; *In re Marriage of Madson* (1978), ___ Mont. ___, ___, 590 P.2d 110, 112.) Thus, maintenance may be awarded even though the marital property of the spouse has not been consumed (*In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 313, 401 N.E.2d 328, 330), or where a spouse's salary is insufficient to maintain the standard of living established during the marriage (see *Madson*, ___ Mont. ___, ___, 590 P.2d 110, 112; *In re Marriage of Powers* (Mo. App. 1975), 527 S.W.2d 949, 955).

Here, the record evinces that the marital property awarded to petitioner was insubstantial apart from her one-half interest in the marital home. Petitioner's sole occupation during the 15-year marriage was that of homemaker. At the time of the trial, she had been employed as a receptionist for four months. Her take home pay was approximately $700 per month. Respondent is a real estate appraiser and at the time of the trial was vice-president of a small appraising company. His earnings were supplemented by the salary he received as a part-time teacher. His monthly take-home pay was approximately $2,300.

■■ Under the circumstances, petitioner was entitled to maintenance since there was a great disparity in the incomes of the parties, and petitioner was clearly unable to support herself at a level consistent with the standard of living established during the marriage. On remand, the trial court should ascertain the current financial status of the parties and, in light of the factors set forth in section 504(b) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)), order an appropriate award of maintenance for a reasonable length of time.

The next issue which we address concerns the proceeds from the sale of jointly owned stocks. The stocks had been pledged as collateral for a $6,000 bank loan, and they were sold by the bank for $7,255. The bank retained $6,176 in payment of the loan and remitted the balance of $1,079 to respondent. Petitioner testified that she was aware that the stocks were pledged as collateral for the loan, but that she did not expect them to be sold. She was not informed that the stocks had been sold until after the fact. She could not recall whether or not she signed any stock powers. As soon as petitioner learned of the sale, she filed an emergency petition in which she asked the court to prevent respondent from using the proceeds of the sale for his own benefit. She also sought an accounting of the proceeds. Pursuant to a court order, respondent filed an accounting which showed that the money from the loan was used to pay for his daughter's Bat Mitzvah, home decorating and various family bills. The balance after repayment of the loan was used primarily to pay petitioner's dental bills and real estate taxes on the marital home. The trial court determined that these funds had been used to pay marital obligations and that there were no funds left to be divided.

■■ We disagree with petitioner's contention that she is entitled to one-half of the entire proceeds from the sale of the stocks. Petitioner testified that she knew respondent was going to take out the loan and that the stocks would be used as collateral. She further testified that a partial purpose for the loan was to pay for her daughter's Bat Mitzvah. In the absence of any claim by petitioner that the stocks were fraudulently acquired from her, or that the funds provided by the loan were not used

in the manner contemplated by the parties, petitioner is not entitled to reimbursement for any portion of the stock sale proceeds used to retire the loan.

■■ The balance after the loan was repaid, however, was erroneously used by respondent to satisfy obligations for which he alone was responsible pursuant to an agreed order. Since these proceeds constituted marital property (see Ill. Rev. Stat. 1977, ch. 40, par. 503(b)), the court, on remand, should divide them in just proportions according to the relevant factors set forth in section 503(c) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(6)).

■■ The trial court should also make a new determination of the amount of petitioner's attorney's fees and costs for which respondent should be responsible. Petitioner's attorney testified that his fees and costs totalled $6,627.50. Respondent was ordered to pay only $1,500 towards this total. This amount was inadequate. Section 508 of the Act authorizes the court to order one spouse to pay a reasonable amount for the costs and attorney's fees necessarily incurred by the other spouse. (Ill. Rev. Stat. 1977, ch. 40, par. 508.) The order is justified where the party seeking it shows a financial inability to pay coupled with the ability of the other party to do so. Financial inability to pay exists where payment of the fees and costs would strip the means of support and undermine the economic stability of the party. *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 152, 396 N.E.2d 1192, 1197; see *Brandis v. Brandis* (1977), 51 Ill. App. 3d 467, 472, 367 N.E.2d 162, 166.

■■ Here, the amount of attorney's fees which petitioner would have been required to pay represented more than 50% of her net annual salary. Apart from her interest in the marital home, petitioner had no other assets or sources of income which would have provided her with funds to pay her share of these fees. In contrast, respondent's ability to pay a substantially greater share of the fees was evidenced by his much larger salary, which was enhanced by several perquisites. On remand, the trial court should re-examine the respective abilities of the parties to pay the attorney's fees in view of their current economic circumstances, so that payment of these expenses will not undermine the economic stability of either party.

Accordingly, the order of the trial court regarding disposition of the marital home, maintenance, the proceeds from the sale of jointly owned stocks and the allowance for attorney's fees is reversed. The case is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

McNAMARA and McGILLICUDDY, JJ., concur.