*In re* MARRIAGE OF DOLORES JUNE DRONE, Petitioner-Appellee, and LOWELL H. DRONE, Respondent-Appellant.

Fifth District   No. 5—90—0050

Opinion filed August 27, 1991.

Paul Thomas Austin, of Marion, for appellant.

Susan Parnell Wilson, of Law Offices of Charles J. Kolker, of Belleville, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The respondent, Lowell H. Drone, appeals the judgment of the circuit court dissolving the parties' marriage; dividing the marital

property; awarding the petitioner, Dolores June Drone, maintenance for two years; and ordering the respondent to pay one-half of the petitioner's attorney fees. The respondent does not contest the dissolution of the marriage; however, he contends that the court's distribution of the marital property was erroneous and inequitable, that the court erred in granting the petitioner temporary maintenance for two years, and that the court erred in ordering the respondent to pay one-half of the petitioner's attorney fees. For the reasons set forth below, we affirm the circuit court's decision in part and reverse and remand in part.

A hearing on the grounds for divorce was held on August 23, 1988, but the court did not enter judgment for dissolution until after the hearing on the remaining issues. At the subsequent hearing on July 20, 1989, the parties stipulated to the following: (1) that the parties were married in January 1983 and separated in March 1988; (2) that the marital residence at 405 South Third Street, Red Bud, Illinois, has a value of $64,000 minus the remaining mortgage of $32,873; (3) that the monthly payments for the marital home, including the mortgage, taxes, and insurance, are $520 per month; (4) that the petitioner has in her possession a 1985 Pontiac which is paid for; (5) that the respondent has a 1986 Mazda pickup truck and a 1966 Buick Classic in his possession; (6) that the parties have divided their personal property to their satisfaction; (7) that for the year 1988 the respondent's income was $46,183.52 and the petitioner's income was $19,574.70; (8) that the petitioner has a retirement plan from St. Luke's Hospital which will pay her $146.13 per month at age 65 and another pension from the Veteran's Administration which will pay her $284 per month at age 65; (9) that both parties have an individual retirement account (IRA) valued at $3,061 each in their own names; (10) that the respondent pays $500 per month child support per a court order from a prior divorce; (11) that the outstanding marital debts for credit cards and medical bills total $1,552.50; and (12) that Dr. Hicks' deposition would be admitted into evidence. The court was also informed that the petitioner's date of birth is December 29, 1930, and the respondent's date of birth is June 18, 1947. The petition for dissolution of marriage filed by the petitioner established that there were no children as the result of the marriage.

The petitioner testified that she and the respondent had resided in the marital home since March 1985, and that she had continued to reside there since the parties' separation in March 1988. When the respondent left the marital home in March 1988, there were several repairs needed on the marital home, which the petitioner enumerated.

Following the parties' separation, the respondent gave the petitioner approximately $2,500 from March 1988 until June 1988. These payments by the respondent were for bills, including the respondent's child support payments, the respondent's car payment, and insurance premiums. Between June 1988 and September 1988, when the court entered a temporary maintenance order, the respondent did not pay the petitioner anything, and she had to make the mortgage payments on the home as well as pay for any maintenance and repair needed. After September 1988, the respondent was ordered to pay the petitioner $340-per-month temporary maintenance.

The petitioner further testified that she has a high school education and one year of training as a licensed practical nurse (LPN). In her current job as an LPN at the veterans' hospital, she may be eligible to receive a $1,000- to $1,500-per-year increase before she retires in 6½ years. At present, her monthly earnings are $1,100 and her monthly expenses are $1,550.

When the parties bought the marital home, the down payment of approximately $25,500 was paid from their joint checking account. The joint checking account was established when the respondent received a workers' compensation settlement check; however, the petitioner had also contributed money regularly to this account. In addition, the home was placed in joint tenancy. At the time of the parties' separation, the joint checking account contained about $300 and their savings account contained about $500, which the petitioner transferred to her own account. Also at the time of the separation, the petitioner had a mutual bond fund which she sold for $554. The petitioner had purchased the mutual bond fund with monies from the joint checking account. During the marriage, the petitioner inherited $1,000 from an aunt, which she used to purchase silver.

At present, the petitioner's checking account has a balance of $250, but she has no savings account. She does have a thrift savings plan through her employment, where she has $75 per month deducted from her paycheck and the employer also contributes a certain amount as well. At the end of 1988, she had $750 in this account. The petitioner expressed her desire to keep the marital home but admitted that she would need the $340-per-month maintenance she is currently receiving from the respondent to do so. In addition, the petitioner testified that she is unable to pay her attorney fees.

The petitioner testified to her medical condition. Since the parties' separation, the petitioner has been seeing a psychiatrist approximately once every two to three weeks for depression. These visits cost $60 per visit and have been paid for by the respondent's health

insurance. She also takes medication daily for her depression and anxiety. The petitioner also has diabetes, which she controls with daily medication, and arthritis, for which she takes medication on an as-needed basis. The petitioner also has to have extensive dental work which will cost $800. The petitioner's medical expenses have been covered under the respondent's health plan through his employment, although she has recently purchased a supplemental policy for herself. This supplemental policy is not as extensive as the respondent's health plan, for the cost for the petitioner to purchase a policy equivalent to the respondent's would be expensive.

The respondent testified as an adverse witness and on his own behalf. He stated that he has been employed by Consolidated Coal Company for 12 years, first as a welder and currently as a grader operator. The respondent's prior work history was as a salesman for Walker Wholesale Company for 10 or 11 years and as a welder and iron worker for F and E Erection Company for a little over a year. His education consisted of a high school education and some vocational training.

The respondent corroborated the petitioner's testimony that he received a settlement check in 1984 of approximately $37,000 for a workers' compensation claim for an injury received prior to the marriage. This settlement check was placed in the parties' joint checking account. From the joint account to which both the petitioner and the respondent contributed, $25,000 from the settlement check was used as a down payment on the marital home. The respondent stated that a portion of the settlement check was used to purchase the petitioner's and the respondent's IRAs and to purchase a carpet and carpet pad for the marital home. He also thought that a couple of thousand dollars may have been used to buy the Mazda truck. It was the respondent's testimony that he did not intend the down payment on the marital home to be a gift; however, on cross-examination, he admitted that he intended to buy "them" a home with the settlement check. Also, he confirmed that the marital home was in joint tenancy.

The respondent testified that his monthly expenses were about $2,100. These expenses included his court-ordered child support of $500 per month, and it also included the temporary maintenance of $340 per month ordered by the court in September 1988. According to the respondent, his pension through his employer will be $241 per month at age 62. The respondent admitted that the petitioner is currently covered through his health insurance plan, which is paid for by his employer.

Melinda Newport, the petitioner's daughter, testified on rebuttal that she had discussed the marital home with the respondent before her mother and the respondent had married. Melinda was concerned because her mother was giving up her home with Melinda's father and her equity in the home, and because her mother was older than the respondent. The respondent reassured her that he intended to buy them a home with the money he received from his workers' compensation claim.

Dr. Hicks' evidence deposition of January 18, 1989, was admitted into evidence. In his deposition, Dr. Hicks testified that he is a psychiatrist, and that he first saw the petitioner on April 29, 1988. At that time, the petitioner had severe depressive symptoms, for which he hospitalized her for almost two weeks. The petitioner was also treated for her noninsulin diabetes. The petitioner has been maintained on antidepressant medication and a low dosage tranquilizer since her discharge. In addition, he has continued to see the petitioner on an outpatient basis, approximately once each three to four weeks. It was the doctor's opinion that the petitioner's problems were caused by her marital difficulties.

Following this evidence, the case was kept open for the submission of information on the respondent's pension plan and for legal memorandums to be submitted by counsel. On November 3, 1989, before the court entered its order in this case, the respondent filed a motion to reopen the case for additional evidence. This motion was denied, and on December 26, 1989, the court entered its order for distribution of marital property, for maintenance, and for attorney fees. In the order of December 26, 1989, the court made findings pursuant to the parties' stipulation. The court also found that the respondent was able-bodied and well able to earn a substantial income both now and in the future, but that the petitioner was quickly approaching retirement age, was in poor health, and was limited in her ability to earn income both now and in the future. The court ordered the dissolution of the parties' marriage and ordered the following distribution of assets: (1) the property discussed in the stipulation was awarded in accordance with the stipulation; (2) the petitioner was awarded the marital home, subject to the mortgage thereon; (3) the petitioner was awarded maintenance of $340 per month for two years; (4) the respondent was ordered to pay one-half of the petitioner's attorney fees ($1,574); (5) the respondent was to keep the petitioner on his health insurance policy for one year; (6) the respondent was to pay $170 for which he is in arrears in his temporary maintenance payments; (7) the respondent was to reimburse the petitioner for the four mortgage

payments paid by her from June 1988 to September 1988; (8) the respondent was to pay the petitioner one-half of the amount needed to make the house repairs and maintenance enumerated in the order; (9) the petitioner was to be solely liable for the marital debts; (10) the silver was to be divided equally; and (11) the parties were to receive their respective IRAs and his or her own pension from their employment. It is from this order that the respondent appeals.

The first issue raised by the respondent is that the court's distribution of the marital property was inequitable. Specifically, the respondent contends that the court erred in finding that the down payment on the marital home made from his workers' compensation settlement check was a gift to the marriage instead of nonmarital property. He asserts that he testified that he did not intend to make a gift of these funds, and that this testimony was uncontradicted.

Before a court distributes property, a determination must be made as to the property's classification, *i.e.*, whether the property is marital or nonmarital. In making this determination, section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 503) sets forth the criteria to be considered. Generally, property acquired before the marriage is presumed to be nonmarital (Ill. Rev. Stat. 1989, ch. 40, par. 503(a)(6)), while property acquired during the marriage is presumed to be marital (Ill. Rev. Stat. 1989, ch. 40, par. 503(b)), with various exceptions delineated in the statute. Thus, we must initially determine whether the respondent's workers' compensation award was marital or nonmarital property before we can consider whether the distribution was equitable.

■■ In this case, the respondent's injury for which he received the workers' compensation settlement check occurred in 1979, before the parties were married. However, he received the settlement check in 1984, during the marriage. Our research has not uncovered any case presenting this exact factual situation, but the reviewing court's decision in *In re Marriage of Dettore* (1980), 86 Ill. App. 3d 540, 408 N.E.2d 429, provides guidance in making our determination. In *Dettore*, the court held that "if the claim for a compensation award accrues during the marriage, the award is marital property regardless of when received." (*In re Marriage of Dettore*, 86 Ill. App. 3d at 542, 408 N.E.2d at 431.) Applying the reasoning of *Dettore*, it is reasonable to infer that the time the cause of action accrues determines the classification of this property interest. Generally, a cause of action accrues when facts exist which allow a person to maintain an action against another. (*Aetna Life & Casualty Co. v. Sal E. Lobianco & Son Co.* (1976), 43 Ill. App. 3d 765, 357 N.E.2d 621, *affirmed* (1977),

69 Ill. 2d 126, 370 N.E.2d 804.) Here, the respondent's workers' compensation claim accrued at the time of his injury in 1979. Therefore, his settlement check was nonmarital property as it was acquired prior to the marriage.

Having classified the settlement as nonmarital property, we find that the court correctly determined that this nonmarital property was transmuted into marital property. The settlement check received by the respondent was placed in a joint tenancy checking account. The statute provides that nonmarital property transferred into some form of co-ownership, such as joint tenancy, creates the presumption that the property is marital property. (Ill. Rev. Stat. 1989, ch. 40, par. 503(b).) Thus, once the respondent placed the settlement check in the joint checking account, the presumption arose that the settlement check was marital property. Further, when the parties purchased the marital home, title to the property was placed in joint tenancy. It has been held that a marital residence is presumed to be marital property, even if one spouse provides all of the consideration, absent clear and convincing evidence to the contrary. *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125.

The evidence presented in this case did not rebut the presumption that the marital home was marital property. The respondent, in his testimony, stated simply that he did not intend the money as a gift. However, he also testified that he intended to buy "them" a home with the proceeds from his workers' compensation case. In addition, the petitioner's daughter's testimony contradicted the respondent's statement that the money used for the down payment of the marital home was not a gift.

Having determined that the court correctly classified the parties' home as marital property, we now address the respondent's contention that the distribution of the marital property was not equitable. The statute requires that the division of marital property be in "just proportions" after consideration of "all relevant factors." (Ill. Rev. Stat. 1989, ch. 40, par. 503(d); *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 440 N.E.2d 1028.) The division of marital property in "just proportions" does not mean the property must be divided in mathematical equality, and an unequal division may be made where the court has properly applied the statute. *In re Marriage of Emery* (1989), 179 Ill. App. 3d 744, 534 N.E.2d 1014.

■ The relevant statutory factors to be considered in this case are the contribution of the parties to the marital property; the value of the property set apart for each spouse; the duration of the marriage; the relevant economic circumstances of each spouse upon distri-

bution of the property; the obligations and rights arising from a prior marriage; the age, health, station, occupation, amount and sources of income, vocational skills, and employability of the parties; whether the apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity of each spouse to acquire capital assets and income in the future. Here, both of the parties were given their respective pensions and IRAs, and the silver was divided equally. The only property which was not given equally was the marital home. We find that the court's distribution of marital property was in just proportions. The evidence revealed that the petitioner was 58 years of age at the time of the divorce and not in the best of health. Because of her age, the petitioner was unlikely to acquire capital assets or income in the future. In contrast, the respondent was 42 years of age, was able to work many more years than the petitioner, and had a greater opportunity to acquire capital assets and income in the future. Further, the petitioner's income was approximately $19,000 per year, while the respondent's annual income was approximately $46,000. Therefore, although the marriage was of only five years' duration, and the respondent had to pay $500 in child support to a former wife, we do not find that the court's distribution of marital property was an abuse of discretion.

The next issue raised on appeal by the respondent is that the court erred when it awarded the petitioner maintenance of $340 per month for two years. In his argument of this issue, the respondent argues evidence he desired to present in his motion to reopen the case for the taking of additional evidence, which motion was denied by the circuit court. The respondent contends that the court erred in refusing to hear the additional evidence that he had lost his job and, because of these changed circumstances, he was unable to pay the petitioner maintenance.

Generally, the decision to deny a motion to reopen proofs is within the sound discretion of the circuit court, and unless the court abused its discretion, the court's decision will not be disturbed on review. (*In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 470 N.E.2d 551.) A court's decision to grant or deny such a motion rests upon the consideration of whether there is some excuse for the failure to introduce the evidence at trial, whether the other party will be surprised or unfairly prejudiced by the new evidence, whether the evidence is of utmost importance to the movant's case, and whether there are cogent reasons for denying the motion. *In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 470 N.E.2d 551.

In the case at bar, we cannot say that the court abused its discretion in denying the respondent's motion to reopen proofs for the hearing of additional evidence. The date of the last hearing on the evidence for the issues of maintenance and distribution of marital property was July 20, 1989. Following the hearing and before the court entered judgment, the respondent stated that he would provide additional information regarding his pension within 30 days. After submission of this information, both the respondent and the petitioner were given two weeks to submit memorandums of law and arguments to the court. The record reveals that the petitioner submitted her written arguments and memorandum of law on October 5, 1989, but the respondent did not file his until December 14, 1989, after he had filed his motion to reopen proofs on November 3, 1989. In the respondent's motion, he states that he will lose his job sometime within two weeks following December 11, 1989. We find that if the court had allowed the respondent's motion to reopen proofs, the petitioner would have been unfairly prejudiced. Further, there are cogent reasons for denying the motion. First, the granting of the respondent's motion would cause undue delay in resolving the parties' case. The resolution of marital dispositions should be done expeditiously out of fairness to both parties, and to allow delays which could possibly alter dispositions prevents timely resolutions. Further, as the court duly noted, the respondent had recourse in that he could file a petition to modify the judgment after the judgment was entered. In addition, the respondent is an able-bodied man and there is no reason to presume that he will be unable to find alternative employment which will enable him to meet his legal obligations. For these reasons, the court's denial of the respondent's motion was not an abuse of discretion. Because the respondent's motion was properly denied, we cannot consider the facts relating to the motion as support for his argument that the court's award of maintenance to the petitioner was improper; however, we now consider whether the facts presented at the hearings supported the court's decision.

Generally, an award of maintenance is a matter of discretion for the circuit court, and the court's decision will not be overturned upon review unless the court abused its discretion or its decision is against the manifest weight of the evidence. (*In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 521 N.E.2d 621.) In determining whether a court's award of maintenance was proper, it must be reviewed in light of the factors set forth in section 504 of the Act. (Ill. Rev. Stat. 1989, ch. 40, par. 504; *In re Marriage of Zummo*, 167 Ill. App. 3d 566, 521 N.E.2d 621.) Section 504 provides that a court may award

maintenance if it finds that the spouse seeking maintenance lacks sufficient property, including marital property awarded, to provide for her reasonable needs and is unable to support herself or otherwise lacks sufficient income. *In re Marriage of Zummo*, 167 Ill. App. 3d 566, 521 N.E.2d 621.

After determining that maintenance is appropriate, section 504(b) provides the factors to be considered in determining the amount and duration of the maintenance award. (Ill. Rev. Stat. 1989, ch. 40, par. 504(b).) Those factors include the financial resources of the person seeking maintenance; the standard of living established during the marriage; the duration of the marriage; the age and physical and emotional condition of the parties; and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

■ The record clearly established that the court did not abuse its discretion in awarding the petitioner maintenance of $340 per month for two years. The evidence revealed that the petitioner's only source of income was her wages earned at the veteran's hospital, a yearly income of about $19,000, while the respondent's yearly income was approximately $46,000. The petitioner testified that her monthly expenses were $1,700, but her monthly income was $1,100, which evidence demonstrated the petitioner's inability to meet her reasonable needs. In contrast, the respondent's monthly income was about $3,800 and his expenses were only $2,100. In addition, the respondent's list of expenses included the monthly maintenance payment of $340 to the petitioner. Clearly the respondent's income was more than adequate to meet his needs while meeting the needs of the petitioner. Additionally, the petitioner was near retirement age, aged 59 at the time of the dissolution of the marriage, and her opportunity to increase her income was extremely limited. However, the respondent was 42 years of age and had many income-producing years ahead of him. Further, the petitioner's physical and emotional condition also prevented her from gaining additional income, as compared with the respondent, who was younger and able-bodied. The court's award of $340 per month for two years was of a limited duration and was not against the manifest weight of the evidence.

The last issue raised by the respondent is that the court erred in ordering him to pay one-half of the petitioner's attorney fees as the petitioner failed to show that the fees sought were reasonably required and necessary for the proper performance of legal services under the circumstances. The respondent does not contend that the peti-

tioner was financially able to pay or that he was unable to pay these fees.

Generally, the burden of proof is upon the party seeking the attorney fees to show that the fees incurred were reasonable and necessary. (*In re Marriage of Douglas* (1990), 195 Ill. App. 3d 1053, 552 N.E.2d 1346.) Here, the evidence presented to the court regarding the attorney fees was through the petitioner's attorney's submission of an affidavit in which the attorney's hours were itemized and her hourly rate given, as well as an enumeration of the costs incurred. The petitioner's attorney did not testify. The total hours given in the affidavit were 33.85 hours, which were billed at $80 per hour. The costs incurred were $440, which combined with the attorney fees totalled $3,148. Also in the affidavit, the attorney stated that the $80 per hour was her "ordinary and usual rate."

At the time of the submission of the affidavit, respondent's attorney objected to its submission. His objection was as follows:

> "Well, I am going to object to it. I take it this is what they do up in St. Clair County and maybe this is something they do in Randolph County. This isn't the way we do it where I am from. I object to it. I believe she should call an attorney to testify that the charges were reasonable and they were necessary for the handling of this case, and I would object for those reasons to the admission of this affidavit of attorney's fees or for the Court's consideration."

From this objection, it is clear that the respondent's attorney found the affidavit to be insufficient to show the fees incurred were reasonable and necessary. We agree with the respondent.

■ In determining whether a spouse may recover attorney fees from another, the financial positions of the parties must be considered. (Ill. Rev. Stat. 1989, ch. 40, par. 508(a).) In addition, " 'the amount of fees to be allowed in a divorce proceeding depends on a consideration of the skill and standing of the attorneys employed, the nature of the controversy, and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter, especially from a family law standpoint; the degree of responsibility involved in the management of the case; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client.' " (*In re Marriage of Douglas*, 195 Ill. App. 3d at 1061, 552 N.E.2d at 1351, quoting *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 458-59, 387 N.E.2d 1254, 1260-61.) Here, just as in *Douglas*, the record was unclear as to whether the fees awarded were reasonable and necessary. Therefore, we reverse and remand

this cause to the circuit court for a hearing on the evidence and to determine the necessity and reasonableness of the attorney fees.

For the foregoing reasons, the judgment of the circuit court of Randolph County is affirmed in part and reversed in part and this cause is remanded to the circuit court.

Affirmed in part; reversed in part; and remanded.

HARRISON and GOLDENHERSH, JJ., concur.