*In re* MARRIAGE OF LAURENCE A. CEPEK, Petitioner-Appellant, and GERALDINE A. CEPEK, Respondent-Appellee.

First District (1st Division)   No. 1—91—1132

Opinion filed June 22, 1992.

Arvid C. Johnson, of Oak Lawn, for appellant.

Susan C. Haddad, of Chicago, for appellee.

JUSTICE MANNING delivered the opinion of the court:

Petitioner Laurence Cepek appeals from the property distribution and maintenance provisions of a judgment of dissolution entered by the trial court on February 21, 1991. On appeal, petitioner contends that the trial court failed to apportion the marital property justly and erred in its ruling which reserved maintenance for five years for respondent and barred maintenance for him. We affirm the judgment of the trial court.

The parties were married on November 7, 1959, and were living separate and apart commencing sometime in 1987. At the time of the proceedings which were held on February 13, 1991, petitioner was 57 years old and respondent was 56 years old. During the course of their marriage three children were born, all of whom are emancipated. Petitioner was a distribution manager for a food chain corporation. He earned $38,307 net in 1990, plus 401(k) contributions; however, he was offered an early retirement package on January 17, 1991, and given 45 days to consider the terms. Respondent worked as a legal secretary in a small firm and earned $21,548 net in 1990.

■ Initially, respondent contends that petitioner has presented an incomplete record to this court by failing to file the entire report of proceedings and exhibits introduced at trial. The law is well settled that " '[t]he burden of supplying a record which contains all matter relied on by the trial court rests with the party claiming error. [Citation.] Where the record is incomplete, a reviewing court will indulge every reasonable presumption favorable to the judgment, order, or ruling from which the appeal is taken. Moreover, when the record on appeal is incomplete, it will be presumed that the trial court heard sufficient evidence and argument to support its decision. [Citation.] Any doubt arising from the incompleteness of the record will be resolved against the appellant.' " *Blakemore v. Panas* (1985), 131 Ill. App. 3d 748, 750, 476 N.E.2d 441, quoting *Aetna Life Insurance Co. v. Strickland* (1975), 33 Ill. App. 3d 52, 56, 337 N.E.2d 285.

■ Although respondent raises the contention of incompleteness, she does not state which reports and exhibits were deleted from the record on appeal. Nevertheless, we believe that respond-

ent's contention has no bearing on our decision. The record before us contains the pleadings, pretrial memoranda, stipulation of issues and positions, transcription of the trial, and other documents such as the proposed early retirement agreement offered to the petitioner. Thus, based upon our review, much of the common law record of the trial court proceedings that is necessary for a determination of this appeal has been included in the record on appeal. Moreover, it is presumed that the trial court heard sufficient evidence and argument to support its decision (*Nelson v. Nelson* (1974), 17 Ill. App. 3d 651, 308 N.E.2d 132), and there has been no showing here by respondent or the petitioner to demonstrate that the record does not support the trial court. Accordingly, absent any contrary indication in the record before us, we are required to find that the present judgment is supported by whatever is contained therein.

Petitioner first contends that the trial court erred in its distribution of marital property since he was essentially unemployed as a result of being forced into early retirement, whereas the respondent continued to work as a legal secretary earning approximately $30,000 annually. Respondent was awarded 60% of the marital assets as follows:

> (1) The equity in the marital home (residence valued at $79,000);
>
> (2) Certificates of deposit (listed in petitioner's name) valued at approximately $7,000; and
>
> (3) A share of petitioner's 401(k) retirement account in the amount of $82,600 (the account valued at approximately $195,000).

Petitioner was awarded 40% of the marital assets, the balance of his 401(k) account. The parties were awarded the life insurance policies on their own lives in the face value amount of $56,000. In addition, the court ordered that respondent and petitioner were entitled to receive 40% and 60%, respectively, of the gross payments of petitioner's early retirement in the event he accepted the agreement.

Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) provides in relevant part:

> "In a proceeding for dissolution of marriage, *** the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance;

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(11) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1989, ch. 40, par. 503(d).

Subsection (d) mandates that the court divide the marital property in "just proportions," taking into consideration the enumerated factors, in addition to any other factors that are relevant to a particular case. (*Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 429 N.E.2d 465.) Although the IMDMA does not require an equal distribution of marital property, our court has found an approximate equality to be equitable, especially in longer marriages. (See *In re Marriage of Randall* (1987), 157 Ill. App. 3d 892, 510 N.E.2d 1153; *In re Marriage of Smith* (1982), 105 Ill. App. 3d 980, 434 N.E.2d 1151; *In re Marriage of Reed* (1981), 100 Ill. App. 3d 873, 427 N.E.2d 282.) In the instant case, the marital property set apart to each spouse was approximately equal; the petitioner was awarded 40% of the assets and the respondent was awarded 60% of the property.

In reaching its decision, the court considered the long duration of the marriage, the respective employment and employability cir-

cumstances of the parties, and their ages, occupations, amount and sources of income and skills. The court determined that respondent earned approximately $30,000 a year and petitioner earned approximately $57,000 annually. The court also considered the reasonable opportunity of each spouse for future acquisition of capital assets and income. In doing so, the court considered the respondent's lack of skills and experience to find appropriate future employment given her age and station in life versus the petitioner's high income and probable capabilities for a continued high income in the future. (See *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.) Although the respondent was gainfully employed in a small two- or three-lawyer firm while the petitioner was being offered an early retirement package, the record also reflects that the court considered that respondent's employment prospects and means of caring for herself in the event of an illness or old age were limited, whereas the petitioner's retirement package included provisions for consulting work, placement services and continued insurance propositions. (See *In re Marriage of Pahlke* (1987), 154 Ill. App. 3d 256, 507 N.E.2d 71.) The respondent had no dental insurance, disability coverage or pension/profit sharing plans but she was covered by restrictive medical insurance.

In addition, the respondent was solely responsible for payments relative to the purchase, ownership and maintenance of the marital home, and her own liabilities, which amounted to approximately $6,700 in credit card debt, a prior debt owed to her mother for the down payment on the home and attorney fees. Moreover, as noted above, the court ordered that petitioner was entitled to the greater share of the lump sum benefits to be received from the retirement agreement if he elected an early retirement.

■ Accordingly, we find that the trial court did not abuse its discretion in dividing the marital property in approximately equal portions based upon the length of a 31-year marriage, the differences in the parties' income, the limited ability of the respondent to acquire future income, the petitioner's better position to acquire capital assets and income in the future, and the liabilities of the parties. An appellate court will only find an abuse of discretion in apportioning marital property where no reasonable person would have adopted the court's decision. (*In re Marriage of Hanson* (1988), 170 Ill. App. 3d 298.) Where the trial court makes an equitable distribution of the marital property (see Ill. Rev. Stat. 1989, ch. 40, par. 503; *In re Marriage of Pahlke*, 154 Ill. App. 3d 256), such

award will not be disturbed absent an abuse of discretion. See *In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 482 N.E.2d 1022.

Petitioner also asserts that the trial court erred in its maintenance provisions in the judgment. Section 504 of the IMDMA authorizes the trial court to provide maintenance to either spouse following a dissolution of marriage. Prior to making a determination as to the amount and duration of a maintenance award, under subsection (b) (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)), the court must first decide whether the award is proper pursuant to the considerations listed in subsection (a) (Ill. Rev. Stat. 1989, ch. 40, par. 504(a)), including the inability of the spouse seeking maintenance to provide for his or her own needs.

■ Although the trial court below did not order a maintenance award to the respondent, it determined that application for an award was proper based upon the existence of certain conditions. The court reserved maintenance for the respondent for five years on the condition that during such period, "if respondent earns less than $25,000 per year and petitioner is earning at least $35,000 per year, respondent may apply for maintenance." In reserving maintenance, we believe that the trial court considered proper factors, including the respondent's prospective need for maintenance in the event her hours were cut at work and her salary was substantially reduced while petitioner's minimum salary remained constant.

Accordingly, we conclude that the trial court did not abuse its discretion in reserving maintenance for respondent for a limited time period in light of her tenuous employment situation, lack of insurance in the event of disability, restrictive medical insurance, and unsuccessful efforts to secure a better paying job. Additionally, we also conclude that the trial court's bar of maintenance for petitioner is reasonable and appropriate in light of the evidence.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.