*In re* MARRIAGE OF BETTY M. EIDSON, Petitioner-Appellee, and MAURICE A. EIDSON, Respondent-Appellant.

Fifth District   No. 5—90—0549

Opinion filed October 15, 1992.

---

908

Morris Lane Harvey, of Law Offices of Morris Lane Harvey, of Fairfield, for appellant.

Donald G. Musick, of Mt. Vernon, for appellee.

JUSTICE HENRY LEWIS delivered the opinion of the court:

The respondent, Maurice A. Eidson, appeals the judgment of the circuit court dissolving the parties' marriage; awarding the petitioner,

Betty M. Eidson, maintenance for 58 months; dividing the marital property; and ordering respondent to pay 72% of the college expenses for the parties' daughter, Tranae. The respondent does not question the dissolution of marriage; however, he contends that the court's distribution of the marital property was inequitable, that the court erred in granting petitioner temporary maintenance for 58 months, and that the court erred in ordering the respondent to pay 72% of Tranae's college expenses. For the reasons set forth below, we affirm in part and modify in part the circuit court's decision.

The parties were married on October 17, 1970, and had one child, Tranae, born October 2, 1972. Petitioner filed a petition for dissolution of marriage on October 3, 1988. The marriage was dissolved on June 26, 1989. Hearings on the remaining issues were held on February 5, February 7, and February 20, 1990. At the time of the aforementioned hearings to determine maintenance and allocate property, both of the parties were employed and in good health. The record discloses that the circuit court distributed the marital assets as follows:

|  |  | Respondent | Petitioner |
|---|---|---|---|
| (1) | Marital Home | $    0.00 | $49,900.00 |
| (2) | Two Burial Plots | 0.00 | 1,700.00 |
| (3) | IRA's | 13,087.11 | 13,087.11 |
| (4) | Nonqualified Annuity | 7,287.67 | 7,287.67 |
| (5) | ABA Plan No. 001 | 898.21 | 898.21 |
| (6) | Money Market Guarantee Plan No. 002 | 4,275.05 | 4,275.05 |
| (7) | Consolidated Coal Co. |  |  |
|  | (a) Key Investment Account | 9,357.58 | 9,357.58 |
|  | (b) Regular Investment Account | 4,301.66 | 4,301.66 |
| (8) | Lump Sum Benefit— Early Retirement | 4,833.61 | 4,833.61 |
| (9) | CESOP Account | 7.29 | 7.29 |
| (10) | Inland Steel Industries |  |  |
|  | (a) Thrift Plan |  |  |
|  | (1) Common Stock | 2,685.49 | 2,685.49 |
|  | (2) Fixed Income Fund | 37,723.47 | 37,723.47 |
|  | (b) Retirement Plan |  |  |
|  | (1) Present Value ($312.26/mo. starting age 65) | 6,494.47 | 6,494.47 |
| (11) | Personal Property (Marital) | 4,624.00 | 14,148.00 |
|  | Total | $95,575.612 | $156,699.61 |

Thus, Maurice was awarded 38% of the marital property, and Betty was awarded 62% of the marital property.

However, the marital debts were ordered to be paid as follows:

|  |  | Respondent | Petitioner |
|---|---|---|---|
| (1) | First Mortgage—King City Federal | $ 0.00 | $7,044.85 |
| (2) | Second Mortgage—Bank of Illinois | 1,319.39 | 1,319.39 |
| (3) | Visa (bal. $618.61 at separation—petitioner paid $305.00) | 0.00 | 313.61 |
| (4) | Mastercard (bal. $663.57 at separation—petitioner paid $465.48) | 0.00 | 198.09 |
| (5) | Famous Barr (petitioner paid) | 0.00 | 14.49 |
| (6) | Mammoth (bal. $90.00 at separation—petitioner paid) | 0.00 | 90.00 |
| (7) | First R/E Mortgage Payments made by wife 10/88 to 12/89 $130.11 at 15 | 0.00 | 1,951.65 |
| (8) | Stan the Tire Man (tires-respondent's truck) | 0.00 | 235.00 |
| (9) | State Farm Automobile Insurance '82 Honda (daughter's car) | 170.10 | 170.10 |
| (10) | License—'82 Honda | 24.00 | 24.00 |
| (11) | Car Repairs—'82 Honda | 78.65 | 78.65 |
| (12) | Ron Moyer—Furniture Appraisal | 0.00 | 10.00 |
| (13) | M.E. Jackson—Jewelry Appraisal | 0.00 | 25.00 |
| (14) | Krehbiel & Associates Report | 750.00 | 750.00 |
| (15) | 1989 R/E Taxes (due 1990) | ½ | ½ |
| (16) | 1990 R/E Taxes (due 1991) | 0.00 | All |

Therefore, Betty was ordered to pay a much more substantial portion of the marital debts than Maurice.

■ According to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)), the division of marital property must be in "just proportions" after a consideration of all "relevant factors." (*In re Marriage of*

*Drone* (1991), 217 Ill. App. 3d 758, 765, 577 N.E.2d 926, 931.) The division of marital property in "just proportions," however, does not mean that the property must be divided with mathematical equality. (*Drone*, 217 Ill. App. 3d at 765, 577 N.E.2d at 931.) An unequal division may be made where the court has properly applied the statute. (*Drone*, 217 Ill. App. 3d at 765, 577 N.E.2d at 931.) In fact, an approximate equality is equitable, especially in longer marriages. (*In re Marriage of Cepek* (1992), 230 Ill. App. 3d 1045, 1048, 596 N.E.2d 131, 134.) Section 503(d) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)) sets forth the factors to be considered by the trial court in determining the division of marital property. The relevant statutory factors to include in this case are as follows: the contribution of the parties to the marital property; the value of the property set apart for each spouse; the duration of the marriage; the relevant economic circumstances of the parties upon distribution of the property; the age, health, station, occupation, amount and sources of income, vocational skills, and employability of the parties; the custodial provisions for any children; whether apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity of each spouse to acquire capital assets and income in the future. (*Drone*, 217 Ill. App. 3d at 765-66, 577 N.E.2d at 931; *In re Marriage of Kristie* (1987), 156 Ill. App. 3d 821, 824, 510 N.E.2d 14, 16.) Thus, the court has broad discretion under section 503(d) to make an equitable apportionment of marital property (*In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 575, 521 N.E.2d 621, 626; *In re Marriage of Phillips* (1992), 229 Ill. App. 3d 809, 825, 594 N.E.2d 353, 363), and abuse of discretion occurs only when no reasonable man could take the view adopted by the trial court. (*Kristie*, 156 Ill. App. 3d at 824, 510 N.E.2d at 16.) "As we have stated countless times before, a trial court's resolution of property division is fettered only by the range of reason. [Citation.] And we, sitting as a reviewing court, will not disturb the judgment unless an abuse of the court's discretion is shown." *In re Marriage of Siddens* (1992), 225 Ill. App. 3d 496, 500, 588 N.E.2d 321, 324.

The respondent relies upon *In re Marriage of Sheber* (1984), 121 Ill. App. 3d 328, 459 N.E.2d 1056, to support his argument that he is entitled to a percentage of the equity in the marital home. However, the respondent fails to recognize the distinction between the case at hand and the *Sheber* case. In *Sheber*, the only significant asset was the marital home; therefore, the court determined that it was appropriate to give the respondent a lien on the proceeds of the sale of the marital home. In the instant case, however, the parties' most substantial assets were their retirement accounts, which were equally di-

vided. Hence, the marital home is not the most significant asset in the instant case, and the respondent is not entitled to a portion of the equity in the marital home because he has failed to show how the trial court abused its discretion in the distribution of the marital property.

Furthermore, the respondent relies upon *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 511 N.E.2d 156, to support his proposition that the marital home should be sold and the equity divided between the parties. However, the respondent fails to realize that the petitioner is not required to sell or diminish her assets in order to meet her needs.

■■ Here, both parties were awarded everything equally with the exception of the marital home and various personal property. We find that the court's distribution of marital property was in "just proportions." The evidence revealed that the petitioner and the respondent were 54 years of age at the time the petition was filed. Both parties worked outside of the home during the marriage and contributed to the marital property. The marriage lasted for almost 19 years. Petitioner was awarded custody of Tranae, and although Tranae was 17 years old and would soon be going to college, she would stay at the marital residence with her mother when she came home from college. Further, the petitioner's income was approximately $18,000 per year, while respondent's annual income was approximately $44,000. Therefore, in this instance, we do not find that the court's distribution of marital property was an abuse of discretion in light of the aforementioned factors and the fact that the respondent has significantly more earning power than petitioner and has sufficient resources to make the payments to petitioner as directed. One of the factors to be considered in the division of property is "the reasonable opportunity of each spouse for future acquisition of capital assets and income." (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(10).) It is obvious that the respondent is in a much better position in this regard than the petitioner. See *Cepek*, 230 Ill. App. 3d at 1049, 596 N.E.2d at 134.

■■ In the same vein, the respondent claims that the court erred when it awarded petitioner maintenance of $500 per month for 58 months. He claims that the division of property which was ordered by the court was adequate to meet the petitioner's needs. In order for a court to grant maintenance, section 504(a) of the Act requires that the court find that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs, is unable to support herself through appropriate employment, or is otherwise without sufficient income. (Ill. Rev. Stat. 1991, ch. 40, pars. 504(a)(1) through (a)(3).) Moreover, maintenance is appropriate for a limited period of

time where the spouse is employable at an income not overly disproportionate from the standard established during the marriage. *Wade*, 158 Ill. App. 3d at 269, 511 N.E.2d at 166.

Maintenance is to be ordered in such amounts and for such periods of time as the court deems just, after a consideration of all relevant factors, including:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties;

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) the tax consequences of the property division upon the respective economic circumstances of the parties." (*In re Marriage of Cheger* (1991), 213 Ill. App. 3d 371, 378, 571 N.E.2d 1135, 1140.)

The propriety, amount and duration of a maintenance award are matters within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (*Cheger*, 213 Ill. App. 3d at 378, 571 N.E.2d at 1140; *Siddens*, 225 Ill. App. 3d at 501, 588 N.E.2d at 325.) Abuse of discretion occurs where no reasonable man would take the view adopted by the trial court. (*Cheger*, 213 Ill. App. 3d at 378, 571 N.E.2d at 1140.) Furthermore, the burden is on the party seeking reversal of the maintenance award to show an abuse of discretion. *In re Marriage of Dodge* (1989), 184 Ill. App. 3d 495, 501, 540 N.E.2d 440, 444.

■ Respondent has not met that burden. The spouse need not be reduced to poverty before maintenance is appropriate. (*In re Marriage of Martin* (1992), 223 Ill. App. 3d 855, 860, 585 N.E.2d 1158, 1162.) While petitioner received approximately 60% of the marital estate, valued at $156,699.61, petitioner is not required to sell or diminish her assets in order to meet her needs. (*In re Marriage of Gable* (1990), 205 Ill. App. 3d 696, 699, 563 N.E.2d 1215, 1217, citing *In re*

*Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 429 N.E.2d 1334; *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 401 N.E.2d 328.) In fact, none of the assets awarded to the petitioner were income producing; therefore, the evidence at trial demonstrated the petitioner's inability to generate income which is sufficient to meet her needs. In determining the award of maintenance, it is the income producible by the property which is to be considered, rather than its value when the other spouse has sufficient income to meet his needs and make a contribution to hers. *In re Marriage of Gentry* (1989), 188 Ill. App. 3d 372, 377, 544 N.E.2d 435, 437.

■ The record established that the court did not abuse its discretion in awarding the petitioner maintenance of $500 per month for 58 months. The evidence revealed that the petitioner's only source of income was her wages earned at a law office, a yearly gross income of about $18,000, while respondent's yearly gross income was approximately $44,000. Thus, maintenance may be awarded even though the marital property of the spouse has not been consumed or where a spouse's salary is insufficient to maintain the standard of living established during the marriage. (*In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, 102, 419 N.E.2d 400, 402.) Furthermore, petitioner was entitled to maintenance since there was a great disparity in the incomes of the parties, and petitioner was unable to support herself at a level consistent with the standard of living established during the marriage. *Brenner*, 95 Ill. App. 3d at 103, 419 N.E.2d at 402.

The petitioner signed an affidavit stating that her monthly expenses were $1,337, but her net monthly income was $1,119, which evidence demonstrated the petitioner's inability to meet her reasonable needs. In contrast, the respondent's net monthly income was about $2,910, and his current expenses were only $1,151 even though his anticipated expenses were $1,563. Clearly, the respondent's income was more than adequate to meet his needs while meeting the needs of the petitioner. Furthermore, the petitioner and respondent will be nearing retirement age when the maintenance award ends, and the petitioner will have retirement monies available to her at that time to provide for her everyday needs. It should also be noted that the mortgage will be paid off at approximately the same time that the maintenance award ends. It is apparent that the court believed that the petitioner lacked sufficient property to provide for her reasonable needs and was unable to support herself through her employment as a secretary. On the other hand, respondent had more than adequate income to provide for the reasonable needs of both parties. The petitioner is not required to sell or diminish her assets to provide for her support when respondent has sufficient income to meet his needs as well

as hers. *Cheger*, 213 Ill. App. 3d at 379-80, 571 N.E.2d at 1141; *Dodge*, 184 Ill. App. 3d at 501-02, 540 N.E.2d at 444.

Finally, the respondent asserts that the court erred in ordering him to pay 72% of Tranae's college education costs and unreimbursed medical expenses. Respondent argues that the court failed to consider the financial resources of the parties.

■■ Again, we are governed by the standard of review which is applicable to the court's apportionment of the marital estate, whether the court abused its discretion so that no reasonable person could agree with the trial court. (*In re Marriage of Olson* (1992), 223 Ill. App. 3d 636, 653, 585 N.E.2d 1082, 1093.) When the court determines parental responsibility for college expenses, it should consider the financial resources of both parents and the child and the standard of living of the child absent divorce. (*Olson*, 223 Ill. App. 3d at 653, 585 N.E.2d at 1094.) The cost of education must also be considered. *Olson*, 223 Ill. App. 3d at 653, 585 N.E.2d at 1094.

The respondent claims that the court did not consider the financial resources of the parties. More specifically, the respondent claims that the court did not take into account that the respondent would be making a $500-per-month maintenance payment to the petitioner. The court apportioned Tranae's college expenses as follows:

> "The Respondent shall currently pay 72% of such reasonable college education expenses and the petitioner shall currently pay the remaining 28%; such percentages are computed as follows:

| | |
|---|---|
| Maurice's net income per Petitioner's Exhibit 19 | $2,910.09 |
| Betty's net income per Petitioner's Exhibit 19 | 1,119.04 |
| Total combined net income of both parties | $4,029.13 |

Maurice's college education expense payment percentage:

$$\frac{\$2,910.09}{4,029.13} = .7222 = 72\%$$

Betty's college education expense payment percentage:

$$\frac{\$1,119.04}{4,029.13} = .2779 = 28\%"$$

Apparently, the court ordered that Tranae's college education expenses be paid according to the parties' respective incomes. However, the court failed to consider the $500-per-month maintenance payment to the petitioner from the respondent. If the court had considered the maintenance payment, the parties' incomes would have been as follows:

| | |
|---|---|
| Maurice's net income after maintenance | $2,410.09 |
| Betty's net income after maintenance | 1,619.04 |
| Total | 4,029.13 |

Thus, Maurice's college education expense payment should be 60% of the total college education expenses, or $2,410.09 divided by $4,029.13. Betty's college education expense payment should be 40% of the total college education expenses, or $1,619.04 divided by $4,029.13. Further, we believe that the unreimbursed medical expenses should be apportioned in the same manner due to the aforementioned reasons because the court apportioned them in the same manner as the college education expenses.

Since the trial court failed to consider the $500 maintenance payment, we believe that the court abused its discretion. Therefore, we believe that this portion of the court's decision should be modified to reflect the actual financial resources of the parties. Thus, Maurice is obligated to pay 60% of Tranae's college education expenses and unreimbursed medical expenses, and Betty is obligated to pay 40% of Tranae's college education expenses and unreimbursed medical expenses. In all other respects, the judgment of the circuit court is affirmed.

For the reasons set forth above, we affirm in part and modify in part.

Affirmed as modified.

GOLDENHERSH, P.J., and HARRISON, J., concur.